BORDEN, INC v DEPARTMENT OF TREASURY

DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

Decision of the Michigan Court of Appeals affirming summary judgment for the plaintiff on its petition to review a determination by the Michigan Department of Treasury of its franchise fees is affirmed by an equally divided Court.

OPINION FOR AFFIRMANCE

T. G. KAVANAGH, LEVIN, and M. S. COLEMAN, JJ.

2. TAXATION—CORPORATIONS—ANNUAL REPORT—FRANCHISE FEE—COMPUTATION.

The Franchise Fee Division of the Department of Treasury exhausts its statutory authority when, following receipt of the annual report of a corporation, it "computes" the franchise fee of the corporation; the Division is not authorized to recompute the fee if it subsequently obtains what it regards as more accurate information.

3. TAXATION—CORPORATIONS—FRANCHISE FEE—ANNUAL REPORT—DEFICIENCY.

The Franchise Fee Division of the Department of Treasury and its predecessor, having computed the tax and accepted and filed a corporation's annual reports for the years in dispute, was without authority to compute the franchise fee a second time and, hence, was without authority to levy a deficiency.

4. TAXATION—STATUTES—CORPORATIONS—FRANCHISE FEE—FIELD AUDIT.

The statutes establishing the procedures for the computation and collection of the corporate franchise fee contain no language expressly or impliedly authorizing field audits (MCLA 450.301–450.310).

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 901, 902.
[2–26] 51 Am Jur, Taxation §§ 794, 808–824.

5. TAXATION—FRANCHISE FEE—COMPUTATION.

*It is too late for the Franchise Fee Division of the Department of Treasury to "work in conjunction" with the Department of Revenue in the "computation" of a franchise fee after it has been computed; whatever "work" is done "in conjunction" with the Department of Revenue manifestly is to be done before the Franchise Fee Division "computes" the fee and any information obtained after computation can be utilized only to assist the Division in the computation of fees for subsequent years.*

6. TAXATION—CORPORATIONS—FRANCHISE FEE—FINAL DETERMINATION —FIELD AUDIT.

*Statutory language requiring a corporation "to furnish detailed and exact information touching such several matters before making a final determination" did not contemplate computations of franchise fees based on field audits but, rather, computations based on information obtained without audits (1921 PA 85).*

7. TAXATION—LEGISLATURE—FRANCHISE FEE—CORPORATIONS—AN-NUAL REPORT.

*The Legislature has failed to provide any means by which a different franchise fee can properly be computed after the fee has once been computed and the annual report of a corporation accepted.*

8. TAXATION—STATUTES—LEGISLATURE.

*The law of taxation is statutory, and historically the prerogative of the legislative branch.*

OPINION FOR REVERSAL

T. M. KAVANAGH, C. J., and SWAINSON and WILLIAMS, JJ.

9. TAXATION—STATUTES—CONSTRUCTION.

*A general rule of construction is that revenue laws containing doubtful language are to be strictly construed against the taxing authority; therefore, the Michigan Supreme Court should resolve any and all doubts in favor of the taxpayer.*

10. TAXATION—STATUTES—CONSTRUCTION.

*Even when there is doubt in the interpretation of a revenue statute, the doubt is to be resolved in favor of the taxpayer only if such resolution gives a reasonable construction to the act.*

11. TAXATION—STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—ADMINISTRATIVE LAW.

*In interpreting revenue laws, it may be important in attempting to construe the legislative purpose behind the laws to consider the interpretations of the administrative agencies which administer and enforce the laws.*

12. TAXATION—STATUTES—CONSTRUCTION.

*Overall, while doubtful language in a revenue statute is to be construed in favor of the taxpayer, this should be done in light of a reasonable construction insuring that the state receives all revenues justly due it; further executive interpretation and legislative acquiescence in that interpretation should be given great weight.*

13. STATUTES—GENERAL CORPORATION ACT—FEES, TAXES AND CHARGES ACT—ANNUAL REPORT.

*A section of the General Corporation Act providing that a corporation's annual report contain "[s]uch other information and facts as the Michigan corporation and securities commission may demand and need for the purpose of computing the annual privilege fee provided by law" and a portion of the fees, taxes and charges act providing "at the time of filing the annual report with the Michigan corporation and securities commission, as required by §§ 81 and 82 of Act No. 327 of the Public Acts of 1931" are the cross-references in each act to the other act; a section of the General Corporation Act permits the request for the filing of needed information other than that particularly specified in order to compute "the annual privilege fee as provided by law," i.e. in the fees, taxes and charges act; a section of the fees, taxes and charges act references a section of the General Corporation Act only to set a time at which fees required by the fees, taxes and charges act shall be paid (MCLA 450.82, 450.304).*

14. CORPORATIONS—GENERAL CORPORATION ACT—STATUTES—TITLE OF ACT—FEES—TAXATION.

*The main purpose of the title and text of the General Corporation Act is the regulation of corporations and to provide information for the public about them; there is not a single word in the title of the Act about fees or taxes (MCLA 450.1 et seq.).*

15. TAXATION—FEES, TAXES AND CHARGES ACT.

*The fees, taxes and charges act is an act with the purpose of raising revenue (MCLA 450.301 et seq.).*

16. Statutes—In Pari Materia—Construction.

*Statutes dealing with the same matter are in pari materia and must be construed together to reach a harmonious result.*

17. Statutes—Construction.

*If by any reasonable construction two statutes can be reconciled and a purpose to be served by each, both must stand and be given effect.*

18. Statutes—Construction—General Corporation Act—Fees, Taxes and Charges Act.

*If the General Corporation Act and the fees, taxes and charges act can be interpreted in such a way that neither denies the full effectiveness of the other, that is the way they both must be interpreted (MCLA 450.1 et seq., 450.301 et seq.).*

19. Statutes—Construction—General Corporation Act—Fees, Taxes and Charges Act—Final Determination.

*In seeking to give full purpose to the legislative intention in the General Corporation Act and the fees, taxes and charges act it makes more sense, and the laws of statutory interpretation require, that the "final determination" concept of a section of the fees, taxes and charges act not be transposed into the General Corporation Act but be construed along with, and a part of, its own act (MCLA 450.1 et seq., 450.301 et seq.).*

20. Taxation—Corporations—Field Audit—Annual Report.

*A field audit of corporation books for tax purposes after "acceptance" or "filing" of an annual report is authorized just as one prior thereto.*

21. Taxation—General Corporation Act—Privilege Taxes—Construction.

*The corporation privilege tax statute should be read and administered to secure to the state all sums justly due it, but no more (MCLA 450.82).*

22. Taxation—Corporations—Audit—Fraud—Error—Incorrectness—Mistake.

*The Treasury Department is authorized to examine and audit corporate books for the purpose of determining "fraud", "error", "incorrectness" or "mistake" either in favor of the state or the taxpayer.*

23. Limitation of Actions—Fees, Taxes and Charges Act—Corporations—Franchise Fee.

*The "as soon as practicable" language of a section of the fees,*

*taxes and charges act which provides that "[e]very corporation subject to the provisions of this act shall be notified as soon as practicable of the computation of its franchise fee" does not relate to the time within which the computation shall be made; it rather relates to notification of the corporation after the computation is made whenever it is made; it cannot be said to be a statute of limitations as to when a final determination may be made as to any privilege tax filed (MCLA 450.309).*

24. ACTION—PERSONAL ACTION—WORDS AND PHRASES—TAXATION—PRIVILEGE TAXES.

*The term "personal action" means an action brought for the recovery of personal property, for the enforcement of a contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property; the collection of privilege taxes is a personal action.*

25. TAXATION—CORPORATIONS—FRANCHISE FEE—LIMITATION OF ACTIONS—ANNUAL REPORT—AUDIT.

*The issuance by Treasury's Corporation Franchise Fee Division of its determination of fees put the corporation taxpayer on notice that the state intended to collect further taxes in a definite amount from the taxpayer; with this issuance of determination of fees the state commenced the action; the claims arose when the annual reports for the years in question were accepted by the Department, for at this time the alleged wrong was done by the taxpayer to the detriment of the state though the state was not aware of any injury until the audit.*

26. LIMITATION OF ACTIONS—TAXATION—CORPORATIONS—ANNUAL REPORT—FINAL DETERMINATION.

*The general six year limitation statute applied and, once a claim arose, by accepting the annual report of the corporation for filing, the state had six years within which to make a final determination or be bound by the fee paid upon acceptance for filing; in a case where the annual report for 1964 was accepted on July 29, 1964, the determination issued in November, 1969 was timely for the years 1964 through 1968 (MCLA 600.5813).*

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Danhof and Van Valkenburg, JJ., affirming Ingham, Donald L. Reisig, J. Submitted September 4, 1973. (No. 2 September Term 1973, Docket No. 54,419.) Decided May 21, 1974. Rehearing denied June 25, 1974.

43 Mich App 106 affirmed by an equally divided Court.

Petition by Borden, Inc., to review a determination by the Michigan Department of Treasury of its franchise fees. Summary judgment for plaintiff. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed by an equally divided Court.

*Dickinson, Wright, McKean & Cudlip* (by *T. Donald Wade* and *Benjamin O. Schwendener, Jr.*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

LEVIN, J. *(for affirmance).* When, following receipt of the annual report of a corporation, the Franchise Fee Division "computes" the franchise fee of the corporation, it exhausts its authority under the statute. The Division is not authorized to *re*-compute the fee if it subsequently obtains what it regards as more accurate information.

The Division (or its predecessor, the Michigan Corporation and Securities Commission) stamped on Borden's reports for each of the years 1964–1968 the date "filed" and the date "accepted". On each report there appears the *"Tentative computation* of fee by Corporation" and separately, in the handwriting of a state employee, the *"Fee as computed* by Franchise Fee Division" (or, for the first two years, *"Fee as computed* by the Michigan Corporation and Securities Commission").[1] (Em-

---

[1] 1964 report: The report was received from Borden on May 8, 1964. A deficiency was computed and Borden notified on July 8, 1964. The

phasis supplied.) Before the reports were accepted,

deficiency was paid July 15, 1964 and the report was filed July 29, 1964:

CORPORATIONS WHICH DO NOT MAINTAIN A REGULAR PLACE OF BUSINESS OUTSIDE OF MICHIGAN OTHER THAN A STATUTORY OFFICE PAY ON ENTIRE PAID-UP CAPITAL STOCK AND SURPLUS.

Tax rate as provided by Sec. 5, Act 85, 1921, as amended (450.305—C.L. 1948).

Tentative computation of fee by Corporation: (5 mills on the dollar).

Average ratio ...... .04047403 ...... ... .... .. ..

Filing fee    -    -    -    - $ .......... .... 2.00

Paid-up Capital    -    ,    - $ 17,009.15 . .

Surplus -    -    -    - $ 47,707.34

TOTAL    -    -    - $ 64,718.49
Less Refund Due          —3,364.32
61,354.17    (Do not fill in space below)

............ ........ THE BORDEN COMPANY .. .. ......... ..... ... ..... ..
(Corporate name)

I declare under penalties of law that I am one of the persons authorized and responsible for the signing of this report and have examined the same, including accompanying schedules and statements and to the best of my knowledge and belief the report is true, correct and complete.

By ................................................... XXXXXX Vice-President
and                                                       Asst.
By ................................................... XXXXXX Treasurer
(Signature of two different individuals required    See Instructions)

Date signed ....    May 4, 1964 ....   .. .. .

Corporations with divided assets.

Average ratio ........ .04047403 ............................. ....... .... ..;

Paid-up capital ... 2,401,829.59           is

Surplus .......... 10,312,282.63 ....................................

Exhibit A, Page 4

Fee as computed by the Michigan Corporation and Securities Commission.

$ ... .... .... .2.00 ... .. ..., filing fee.

$ ... 17,009.15 ..., on capital stock.

$ 51,561.41 ...., on surplus.

Total $ 68,522.56

Difference $ ... ... ..... ..... ..... . ......., due state.

$ ..... .. . . . ... ....... ... ..... ......., due corporation.

1965 report: Received and filed without change:

CORPORATIONS WHICH DO NOT MAINTAIN A REGULAR PLACE OF BUSINESS OUTSIDE OF MICHIGAN OTHER THAN A STATUTORY OFFICE PAY ON ENTIRE PAID-UP CAPITAL STOCK AND SURPLUS.

Tax rate as provided by Sec. 5, Act 85, 1921, as amended (450.305—C.L. 1948).

Tentative computation of fee by Corporation (5 mills on the dollar).
Average ratio .......... .04122139
Filing fee _    _    _    _ $    .    2.00
Paid-up Capital 3,860,786.71 $    19,253.93
Surplus   _   13,530,151.49 $    67,650,687⁵
TOTAL   _   _   _   $   .86,906.61

THE BORDEN COMPANY
(Corporate name)

I declare under penalties of law that I am one of the persons authorized and responsible for the signing of this report and have examined the same, including accompanying schedules and statements and to the best of my knowledge and belief the report is true, correct and complete.

By ................................................ XXXXXX Vice-President
and                                               Asst.
By J.H. ........................................... XXXXXX Treasurer
(Signature of two different individuals required    See Instructions)

Date signed ...    April 30, 1965

(Do not fill in space below)

an overpayment was computed by the Franchise
Fee Division for 1966, a deficiency by the Corpora-

---

Corporations with divided assets

Fee as computed by the Michigan Corporation
and Securities Commission.

Average ratio _____ .( $123,134

$ _ _ _ 2.00 _ , filing fee

Paid-up capital _____ 3,850,786.91 _

$ ___ 19,253.93 _ , on capital stock

Surplus _____ 13,530,151.63 _

$ ___ 67,650.68 _ _, on surplus.

Total $ _ 86,906.61 _ _

Difference $ _ _ _ _ _ , due state.

Exhibit B, Page 4

$ _ _ _ _ _, due corporation.

1966 report: An overpayment was computed by the Division and
refund was made after the report was filed:

---

Tax rate as provided by Sec. 5, Act 85, 1921,
as amended (450.305–C.L. 1948).

THE BORDEN COMPANY
(Corporate name)

Tentative computation of fee by Corporation:
(5 mills on the dollar).

I declare under penalties of law that I am one of the persons authorized
and responsible for the signing of this report and have examined the
same, including accompanying schedules and statements and to the best
of my knowledge and belief the report is true, correct and complete.

Average ratio _____ .04482410

Filing fee _ _ _ _ $ _ _ 2.00

By _____ President or Vice-President

Paid-up Capital _ _ _ $ _ 21,694.03

and

Asst.

Surplus _ _ _ _ $ _ 86,331.92

By _____ Secretary or Treasurer

TOTAL _ _ _ $ _ 108,027.95

(Signature of two different individuals required   See instructions)

(Do not fill in space below)

Date signed _ _ May 5, 1966 _ _

---

Fee as computed by Franchise Fee
Division, Department of Treasury.

Average ratio _____ .042856

$ _ _ _ 2.00 _ , filing fee

Paid-up capital _____ 4,148,300.64

$ ___ 20,741.52 _ , on capital stock

Surplus _____ 16,508,256.71

$ _ 82,541.33 _ , on surplus.

Total $ 103,284.83

Difference $ _____ , due state

Exhibit C, page 4

$ ___ 1,112.12 _ , due corporation.

tion and Securities Commission for 1964. The deficiency was paid and is not in dispute.[2]

1967 report: Received and filed without change:

Tax rate as provided by Sec 5, Act 85, 1921, as amended (450.305–C.L. 1948).

Tentative computation of fee by Corporation· (5 mills on the dollar).
Average ratio ..........................................
Filing fee - - - $ .......... 2.00
Paid-up Capital 4 403 577.9 .......... 22,017.90
Surplus - - 1-7 795 596.3 .......... 98,977.93
TOTAL - - $ .......... 120,997.83

I declare under penalties of law that I am one of the persons authorized and responsible for the signing of this report and have examined the same including accompanying schedules and statements and to the best of my knowledge and belief the report is true, correct and complete.
By .......................................... President or Vice-President
and
By .......................................... Asst Secretary or Treasurer
(Signature of two different individuals required. See Instructions)
Date signed ..........................................
(Do not fill in space below)

Fee as computed by Franchise Fee Division, Department of Treasury.

Average ratio .......... .043 813 34
Paid-up capital .......... 4 403 577.39
Surplus .......... 17 795 566 23

$ .......... 2.00 .... filing fee
$ .......... 22 017 70 . on capital stock.
$ .......... 98 977 91 . on surplus.
Total $ .......... 120 997 23
Difference $ .......... . due state.
$ .......... . due corporation.

Exhibit D, Page 4

1968 report: Received and filed without change after further information was furnished by Borden:

Tentative computation of Fee by Corporation (Rate 5 mills)
Average Ratio ...........................
Filing Fee $ .......... 2.00
Paid up Capital $ .......... 20,708.44
Statutory Surplus $ .......... 98,217.65
Total $ .......... 118,928.09
(Minimum Total $12 00)

MAKE REMITTANCE PAYABLE TO STATE OF MICHIGAN

I declare under penalties of law that I am one of the persons authorized and responsible for the signing of this report and have examined the same, including accompanying schedules and statements and to the best of my knowledge and belief the report is true, correct and complete.
By .......................................... VICE-PRESIDENT
and
By .......................................... TREASURER
(Signature of two different individuals required See instructions)
Date signed May 13, 1968

Exhibit E, Page 1

(DO NOT WRITE IN THIS SPACE)
Average Ratio .......... .0393 6785
Paid-up Capital .......... 4. 141, 688.
Surplus .......... 19, 643,530.

$ .......... 2.00 filing fee
$ .......... 20 705 44 on capital stock
$ .......... 91 5 7 4 on surplus
Total .... .... $ .......... 114 718 04
Interest .... .... .... $ —
Difference ........ $ — — — — (Due State, Due Corp.)

Exhibit E, Page 5

[2] See fn 1.

Borden was later notified, based on information obtained in subsequent field audits, of claimed deficiencies for the five years. From an adverse redetermination by the appeal board, it appealed to the circuit court. The circuit judge and, on further review, the Court of Appeals agreed with Borden that the Division and its predecessor, having computed the tax and accepted and filed Borden's annual reports for the years in dispute, was without authority to compute the tax a second time and, hence, was without authority to levy a deficiency. We would affirm those judgments.

I

The statutory provisions establishing the procedures for the computation and collection of the corporate franchise fee took their present form in 1921.[3]

These provisions were structured on the premise that promptly after the filing of the annual report of a corporation, the franchise fee for the year would be computed by the Secretary of State (later the Michigan Corporation and Securities Commission, now the Corporate Franchise Fee Division of the Department of Treasury) after the receipt of such additional information as he (or his successors) requires.[4]

---

[3] 1921 PA 85; MCLA 450.301–450.310; MSA 21.201–21.210(1).

[4] It is clear both from the language of the annual report forms (see fn 1) and of the statutes (infra, this footnote) that the key word is "computation".

The corporate franchise fee is initially self-assessed. The taxpayer is required to file an annual report supplying information from which the fee can be computed, and is further required to pay the fee it computes as shown on the annual report when it is filed. The statute specifies in some detail the information to be set forth in the annual report, additionally requiring "[s]uch other information and facts as the department of treasury may demand and need for the purpose of computing the annual privilege fee provided by law." (Emphasis

The statutes contain no language expressly or impliedly authorizing field audits. The practice was not to conduct field audits.

Subsequently, with the enactment of the sales, use and other state taxes, field audits pertaining to *those* taxes were legislatively authorized.

In 1941 the Department of Revenue was created to coordinate the collection of state taxes and to avoid duplications in facilities for tax collections and audits. The administration of the sales, use and other taxes was transferred to this new de-

---

supplied.) 1970 CL 450.82; MSA 21.82, now MCLA 450.1911; MSA 21.200(911); MCLA 450.304; MSA 21.205.

The collector of the corporate franchise fee is not bound by the amount shown on the report; the taxpayer can be required to furnish additional information. It is provided that the "Michigan corporation and securities commission shall in all such cases be authorized to require the corporation to furnish detailed and exact information touching such several matters before making a *final determination* of the privilege fee to be paid by such corporation." (Emphasis supplied.) MCLA 450.304; MSA 21.205.

It was also provided that such reports shall be carefully examined and "if upon such examination they shall be found to comply with all the requirements of this act" the report shall be filed and a copy forwarded to the county where the corporation has its registered office. 1970 CL 450.84; MSA 21.84, now MCLA 450.1131; MSA 21.200(131).

It is further provided that "[i]n the case of *computing* the annual franchise fee * * * *such computations* shall be made by the Michigan corporation and securities commission, *working in conjunction* with the state department of revenue". (Emphasis supplied.) MCLA 450.305; MSA 21.208.

It is further provided that the corporation *"shall be notified as soon as practicable of the computation* of its franchise fee pursuant [to the last mentioned provisions] * * * *in the event it* has remitted an amount in excess of the proper fee or *has any further liability with respect thereto";* provision is made for refund or credit of any excess paid; and any corporation "may apply for a redetermination of its franchise fee by filing a written request therefor with the corporation and securities commission within 20 days after receipt of notice of the *original computation* above referred to". The commission "shall promptly *redetermine* the liability of such corporation." The corporation may then appeal to the appeal board; the appeal board "shall *recompute* the liability of the taxpayer". (Emphasis supplied.) MCLA 450.309; MSA 21.210.

partment.[5] The Department also succeeded to the
functions and responsibilities of the Michigan Cor-
poration and Securities Commission "over the en-
forcement, investigation and collection of *past-due
and delinquent* corporate privilege and franchise
fees and license fees of any nature."[6] The Commis-
sion retained the duty to "compute" the franchise
fee and collect franchise fees not "past-due and
delinquent".

In 1952, in connection with a revision of the
computation formula, it was provided that the
Commission would continue to "compute" the
franchise fee "working in conjunction with the
state department of revenue." No other change
was made in structure or procedure.

## II

It is too late for the Franchise Fee Division to
"work in conjunction" with the Department of
Revenue in the "computation" of a franchise fee
after it has been computed. Whatever "work" is
done "in conjunction" with the Department of
Revenue manifestly is to be done before the Fran-
chise Fee Division "computes" the fee. Any infor-
mation obtained after computation can be utilized
only to assist the Division in the computation of
fees for subsequent years.

The "final determination" language goes back to
the original enactment in 1921; it is part of a
sentence authorizing the Michigan Corporation
and Securities Commission to require the corpora-

---

[5] 1941 PA 122.

In contrast with the statutory provisions relating to the franchise
fee, the Sales Tax Act (MCLA 205.68, 205.72; MSA 7.539, 7.543), the
intangibles tax act (MCLA 205.141, 205.143; MSA 7.556[11], 7.556[13]),
and the Income Tax Act (MCLA 206.455, 206.408; MSA 7.557[1455],
7.557[1408]), provide for audit and assessment of deficiencies.

[6] MCLA 205.13; MSA 7.657(13).

tion *itself* to furnish information in addition to that required in the annual report:

"[T]o furnish detailed and exact information touching such several matters before making a final determination."[7]

Clearly that language did not contemplate computations based on field audits but, rather, computations based on information obtained without audits. Nor could this language—enacted two decades before the Department of Revenue was created—set the stage for recomputations based on Revenue Department audits.

The foregoing construction of this 1921 enactment finds support in the fact that 14 years later field audits were still thought to be impractical:

"The statute does not provide, in express language or by authorization of expense, for the impractical procedure of audit and appraisal of each corporation each year by the State. It contemplates that the tax shall be found from the annual report of the corporation to the Secretary of State supplemented by the further facts demanded * * * ." *In re Appeal of Hoskins Manufacturing Co,* 270 Mich 592, 596–597; 259 NW 334 (1935).[8]

This Court has said: "Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The

---

[7] The deficiencies sought to be levied against Borden are based on field audits, not on information furnished by Borden in response to inquiries from the Franchise Fee Division "touching such several matters".

[8] In both *Hoskins* and *McLouth Steel Corp v Corporation & Securities Commission,* 372 Mich 76; 124 NW2d 900 (1963), the proceedings concern computations of franchise fees before acceptance and filing of annual reports, not an attempted recomputation.

scope of tax laws may not be extended by implica-
tion or forced construction. Such laws may be
made plain, and the language thereof, if dubious,
is not resolved against the taxpayer." *In re Dodge
Brothers,* 241 Mich 665, 669; 217 NW 777 (1928),
an appeal from a computation of a corporate fran-
chise fee pursuant to 1921 PA 85.

### III

The Franchise Fee Division stresses the need for
prompt filing and acceptance of the annual report,
the impracticability of auditing a corporation's
books every year and the utility of combining an
audit for other tax purposes with an audit for
corporate franchise fee purposes. These are en-
tirely valid considerations but they overlook the
history of the franchise fee.

The franchise fee was initially a license fee—
sometimes called a privilege fee—to be paid in
advance for the privilege of exercising the fran-
chise during the ensuing year. The procedures for
computation of the fee contemplate that it will be
determined promptly after the annual report is
filed and before the franchise is exercised. The
annual report division has consistently adminis-
tered its responsibilities in this manner. Only in
subsequent years did the fee become a revenue
raising measure,[9] but the authority of the tax
collector—the Franchise Fee Division and its pred-
ecessors—was not enlarged, the statutory proce-
dures have not been changed. Only recently, many
years after the 1952 amendment (see text follow-

---

[9] Initially, the fee was not less than $50 nor more than $10,000
(1921 PA 85, § 4); subsequently the minimum amount was reduced to
$10 and the maximum amount was increased to $50,000 (1923 PA
233) and still later the maximum amount was eliminated (1951 PA
277).

ing fn 6) has the Franchise Fee Division sought, based on field audits for other tax purposes, to recompute a franchise fee it had previously computed.

While it may make sense to utilize field audits in determining the correct fee, the Legislature has failed to provide any means by which a different fee can properly be computed after the fee has once been computed and the annual report accepted.

The Attorney General would have us revise the procedures so that this seemingly desirable safeguard of the revenues can be implemented. When confronted with the need for finality and the absence of a statute of limitations other than the limitation implicit in the obligation to compute the fee promptly before acceptance of the annual report, he suggests the six-year statute applicable to personal actions.

Only by a strained construction can that limitation period—applicable to actions commenced in a court[10]—be applied to the determination of a tax deficiency which a department of government claims it is authorized to make without commencing an action and, if it is correct in its thesis, once made is final unless the taxpayer appeals. A determination so made may never reach a court, and then only upon *appeal* from an adverse administrative determination, not as an *action* commenced in court.[11]

---

[10] "All other personal actions shall be commenced within the period of 6 years after the claims accrue * * * ." MCLA 600.5813; MSA 27A.5813.

[11] *In re MacDonald Estate,* 341 Mich 382; 67 NW2d 227 (1954), dealt with the applicability of the general statute of limitations in the context of an *action* commenced in the probate court.

The decedent's will was admitted to probate on petition filed with that court. The estate had never been closed. The probate court had cited the surety on the executrix's bond and had ordered the surety to

## IV

Courts are, indeed, sometimes constrained to supply a gap in legislation, particularly legislation which builds on common-law doctrine. The law of taxation is statutory, and historically the prerogative of the legislative branch.

The Attorney General and the Franchise Fee Division ask us not just to improvise to provide for utilization of an audit capability which did not exist when the corporate franchise fee procedures took their present form in 1921, but to *change* a long established feature of the administration of the franchise fee. They ask us to eliminate the finality, absent fraud or administrative appeal, of the computation made early in the year the franchise is exercised, and to substitute a relatively long six-year statute of limitations.

If the present system does not adequately safeguard the revenue, the Division may present the evidence to the Legislature.[12] The Legislature will be as concerned about protecting the revenue as the Department of the Treasury and the Attorney General. It has not been demonstrated that there is need for judicial improvisation pending a legislative solution. A legislative solution has the advantage that at the same time there can be enacted a statute of limitations expressive of legislative choice concerning an appropriate limitation period.

T. G. KAVANAGH and M. S. COLEMAN, JJ., concurred with LEVIN, J.

---

pay inheritance tax based on a determination made 28 years after the death of the deceased; the order was set aside on appeal.

[12] The extent of the revenue loss under the system established by the Legislature is unclear.

WILLIAMS, J. *(for reversal)*. This case involves construction of the General Corporation Act[1] and the fees, taxes and charges act.[2] Specifically the issue is whether the "final determination" provided for in § 4 of the fees, taxes and charges act may be made within a reasonable time after a field audit authorized by that act or whether it must be made prior to "acceptance" of a corporate filing of its report and accompanying franchise fee under the general corporation act.

## I—FACTS

Plaintiff, (hereinafter taxpayer) a New Jersey corporation with principal offices in New York City, has been authorized to do business in this state since 1936. From that date, taxpayer as required by the General Corporation Act MCLA 450.82; MSA 21.82 has submitted its annual report and privilege (franchise) fee to the Fee Division of the Department of Treasury (and its predecessor, the Corporations and Securities Commission) for a determination of the correctness of the fee submitted.

In 1963, taxpayer purchased all of the stock of Vlasic Dairy, Inc., a Michigan corporation. The annual reports filed for 1964–1968, the years here in question, failed to include certain alleged "sales" which were made by taxpayer parent company to its subsidiary Vlasic.

The annual reports for these years and the franchise fees submitted by taxpayer were either accepted as filed or accepted after receiving additional information from taxpayer which was re-

---

[1] MCLA 450.1 *et seq.;* MSA 21.1 *et seq.*
[2] MCLA 450.301 *et seq.;* MSA 21.201 *et seq.*

quested after desk review of the report.[3] The procedure followed by defendant Treasury is that when the annual report is received, the date of receipt is stamped next to the word "filed" on the first page of the form. When the report has been desk reviewed and appears to provide the required information, the date of review is stamped behind the word "accepted".

During the year 1969, the Department of Treasury, Revenue Division, conducted a field audit of taxpayer's books and records located at Columbus, Ohio and New York City. As a result of that audit, alleged sales between taxpayer and its subsidiary were discovered. Taxpayer denies the discovered transactions were sales. The Fee Division believed these "sales" should have figured in the formula establishing the percentage of taxpayer's business done in Michigan and should have been included in the annual reports filed for 1964–1968.

The Fee Division, on November 18, 1969 issued a "determination based on field audit" claiming deficiencies in taxpayer's fees for 1964–1968 in the amount of over $35,000 plus 5% interest. After notification of this deficiency taxpayer on November 24, 1969 requested a redetermination in accordance with MCLA 450.309; MSA 21.210. The redetermination was issued on January 29, 1970 showing the deficiency in the same amounts.

---

[3] The following is a table showing the path of each annual report in question.

| Year Ending | Report Filed | Added Information | Report Accepted |
|---|---|---|---|
| 1964 Annual Report | 5/8/64 | Deficiency noted............7/8/64 | |
| | | Deficiency paid............7/15/64 | 7/29/64 |
| 1965 Annual Report | 5/6/65 | | 6/16/65 |
| 1966 Annual Report | 5/9/66 | Overpayment noted......8/10/66 | |
| | | Refund received............9/19/66 | 8/31/66 |
| 1967 Annual Report | 5/12/67 | | 6/12/67 |
| 1968 Annual Report | 5/16/68 | Information requested 1/30/69 | |
| | | Information furnished 2/26/69 | 3/8/69 |

On March 2, 1970, taxpayer filed a petition for review of the determination in circuit court pursuant to the administrative procedures act MCLA 24.101 *et seq.;* MSA 3.560(21.1) *et seq.* and prayed for a summary judgment in its favor. The trial court agreed with the taxpayer's position and disallowed the redetermination of the franchise fees due for all the years in question, adopting a two-pronged rationale. The trial court believed that by "accepting" the report a final determination of the franchise fee had been made. But even "if it is to be determined that the acceptance of the report was not the determination, then * * * in this case * * * for all of the years in question, * * * , the State's failure to give notice to Borden of the computation of a different tax or that they were not in agreement as to what the tax should be, bars the State from any later redetermination, no matter what they call it."

The Court of Appeals affirmed. 43 Mich App 106; 204 NW2d 34 (1972). It held that the state had failed to notify the taxpayer " 'as soon as practicable of the computation of its franchise fee' in the event that such corporation has any further liability with respect to that fee" in violation of MCLA 450.309; MSA 21.210. 43 Mich App 106, 109–110; 204 NW2d 34, 36. It also believed that the state had no right, except in case of fraud, to go back of the reports once they have been accepted.

We granted leave on December 26, 1972. 389 Mich 751.


## II —CONSTRUCTION OF REVENUE LAWS

This section is more to set the tone for the following arguments than to dispose of the issue. Taxpayer argues that:

"The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer." *In re Dodge Brothers,* 241 Mich 665, 669; 217 NW 777, 779 (1928).

There is no doubt that this Court has followed the general rule of construction that revenue laws containing doubtful language are to be strictly construed against the taxing authority. *Hart v Department of Revenue,* 333 Mich 248, 252; 52 NW2d 685, 687 (1952); *Ready Power Co v Dearborn,* 336 Mich 519, 525; 58 NW2d 904, 906 (1953); *Ecorse Screw Machine Products Co v Corporation & Securities Commission,* 378 Mich 415, 418; 145 NW2d 46, 47 (1966). See also 3 Sutherland, Statutory Construction (1943), § 6701, p 293.

Therefore the taxpayer correctly argues that this Court should resolve any and all doubts in favor of the taxpayer.

While we do not view the statutes as being as doubtful as taxpayer does, we simultaneously keep in mind other rules of construction of revenue laws. In *In re Detroit & Windsor Ferry Co,* 227 Mich 143, 146; 198 NW 725, 726 (1924) we stated, in a case involving franchise fee liability:

"The statute should receive a reasonable construction with a view to carrying out its purpose."

This rule of construction was elaborated on in Sutherland, *supra,* § 6703, p 297:

"Although the variant forms of taxation may sometimes produce individual hardships, a too stilted interpretation of tax laws for the benefit of the taxpayer may result in the loss of revenue at the expense of the government and operate to the disadvantage of others contributing to its support. * * * Therefore, a reasonable construction of all tax measures should be prefer-

red. Emphasis belongs upon the general objectives of such laws with the view to accomplishing uniformity and equality among the class of persons sought to be taxed."

COOLEY in his treatise on taxation blends the strict construction rule and reasonable construction purpose rule in this manner:

"In construing revenue laws, special consideration is of course to be had of the purpose for which they are enacted. That purpose is to supply the government with a revenue. But in the proceedings to obtain this it is also intended that no unnecessary injury shall be inflicted upon the individual taxed. While this is secondary to the main object—the impelling occasion of the law—it is none the less a sacred duty." 2 Cooley, Taxation (4th ed), § 503, p 1113 (1924).

Therefore, even when there is doubt in the interpretation of the statute, the doubt is to be resolved in favor of the taxpayer only if such resolution gives a reasonable construction to the act.

Further in interpreting revenue laws, it may be important in attempting to construe the legislative purpose behind the laws to consider the interpretations of the administrative agencies which administer and enforce the laws. Sutherland calls the effect of administrative interpretation "[o]ne of the most significant aides of construction in determining the meaning of revenue laws * * * ." § 6709, p 308.

In *Hazel Park v Municipal Finance Commission,* 317 Mich 582, 605; 27 NW2d 106, 116 (1947) we stated:

"While not controlling, administrative construction of a doubtful provision in the law is considered and given weight by the courts.

" 'It is well settled that the construction placed upon statutory provisions by any particular department of government for a long period of time, although not binding upon the courts, should be given considerable weight.' *Aller v Detroit Police Department Trial Board,* 309 Mich. 382, 386 [15 NW2d 676 (1944)].

"See, also, *Board of Education of Union School District of City of Owosso v Goodrich,* 208 Mich. 646 [175 NW 1009 (1920)] and *Thoman v City of Lansing,* 315 Mich. 566 [24 NW2d 213 (1946)]."[4]

Indeed, while a review of the statutory history shows that the general corporation act and the fees, taxes and charges act have been amended numerous times, the Legislature has never seen fit to change the general practice of the Fee Division or its predecessor the Corporation and Securities Commission as to determining the franchise fee.

In *Melia v Employment Security Commission,* 346 Mich 544, 565; 78 NW2d 273, 276 (1956) we stated, quoting from the syllabus of *Chrysler Corp v Smith,* 297 Mich. 438; 298 NW 87 (1941):

"The executive interpretation given a law by officials charged with its administration must be presumed to have been known to the legislature * * * ." (Cited with approval in *Lane v Department of Corrections, Parole Board,* 383 Mich 50, 57; 173 NW2d 209, 212 [1970].)

---

[4] *See also Boyer-Campbell Co v Fry,* 271 Mich 282, 296; 260 NW 165, 170 (1935) quoting with approval language from *United States v Moore,* 95 US 760, 763; 24 L Ed 588, 589 (1877);

*Ready Power Co v Dearborn,* 336 Mich 519, 525; 58 NW2d 904, 906 (1953);

*Roosevelt Oil Co v Secretary of State,* 339 Mich 679, 693–694; 64 NW2d 582, 589 (1954);

*Lorraine Cab v Detroit,* 357 Mich 379, 384; 98 NW2d 607, 610 (1959);

*Wehmeier v W E Wood Co,* 377 Mich 176, 191–192; 139 NW2d 733, 740 (1966);

*Magreta v Ambassador Steel Co,* 380 Mich 513, 519–520; 158 NW2d 473, 475 (1968);

*Lane v Department of Corrections, Parole Board,* 383 Mich 50, 55–57; 173 NW2d 209, 211–212 (1970).

Overall, while doubtful statutory language is to be construed in favor of the taxpayer, this should be done in light of a reasonable construction insuring that the state receives all revenues justly due it. Further executive interpretation and legislative acquiescence in that interpretation should be given great weight.

## III —PERTINENT STATUTORY PROVISIONS

Turning then to the statutes to be construed, the most pertinent parts of the General Corporation Act[5] follow:

"Sec. 82. A report accompanied by a filing fee of $2.00 *and the amount of the annual privilege fee as provided by law* shall be FILED with the Michigan corporation and securities commission by all profit corporations, * * * It shall contain the following:"

[(a) through (o) information relative to incorporation, capital stock, assets and liabilities, etc.]

"(p) *Such other information and facts as the Michigan corporation and securities commission may demand and need for the purpose of computing the annual privilege fee provided by law.*" (Capitalization of word and emphasis added.)

"Sec. 84. Filing reports. The secretary of state shall carefully examine all reports FILED in accordance with sections eighty-one and eighty-two of this act, and, if upon such examination they shall be found to comply with all the requirements of this act, he shall then FILE one of them in his office, and shall forward the other by mail or express to the county clerk of the county where such corporation has its registered office in this state. It shall be the duty of such county clerk, upon receipt of such report, to cause the same to be filed in his office immediately." (Capitalization of word added.)

---

[5] MCLA 450.1 *et seq.;* MSA 21.1 *et seq.*

The most pertinent parts of the fees, taxes and charges act[6] follow:

*Franchise fee, rate; * * **

"Sec. 4. Every cooperative association and every profit corporation organized or doing business under the laws of this state, or having the privilege to do business, employing capital or persons, owning or managing property or maintaining an office, or engaging in any transaction, in this state * * * shall PAY, *at the time of filing the annual report with the Michigan corporation and securities commission, as required by sections 81 and 82 of Act No. 327 of the Public Acts of 1931,* as amended, * * * an annual fee of 5 mills upon each dollar of its paid-up capital and surplus, * * * The Michigan corporation and securities commission shall in all such cases be authorized to require the corporation to furnish detailed and exact information touching such several matters before making a final determination of the privilege fee to be paid by such corporation." (Capitalization of word and emphasis added.)

*Corporation franchise fee, computation * * **

"Sec. 5. In the case of computing the annual franchise fee prescribed by section 4, both as to domestic and foreign corporations, such computations shall be made by the Michigan corporation and securities commission, working in conjunction with the state department of revenue, upon the entire paid-up capital and surplus of any corporation which is not taxable in another state.

* * *

"With respect to any other corporation, * * * , paid-up capital and surplus shall be apportioned to the state by multiplying the paid-up capital and surplus by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3." [The 3 factors are obtained by finding in each case the ratio that subject in Michigan bears to the corporation's total.]

*Corporation franchise fee; notification of excess remit-*

6 MCLA 450.301 *et seq.;* MSA 21.201 *et seq.*

*tance, refund or credit; redetermination, request; appeal
board; rules and regulations*

"Sec. 9. Every corporation subject to the provisions of
this act shall be notified as soon as practicable of the
computation of its franchise fee made pursuant to
sections 5, 5a, 5b, 5c and 5d of this act in the event it
has remitted an amount in excess of the proper fee or
has any further liability with respect thereto. * * * "

The first thing that will be noticed about the
two acts is that the critical term in the General
Corporation Act is "FILED" in both §§ 82 and 84,
whereas in the fees, taxes and charges act it is
"PAY" in § 4, while §§ 5 and 9 relate to the
computation of what is to be paid.

The italicized portions of the General Corpora-
tion Act, *viz.* § 82(p), and of the fees, taxes and
charges act, *viz.* part of § 4, are the cross refer-
ences in each act to the other act. Section 82(p) of
the General Corporation Act permits the request
for the filing of needed information other than
that particularly specified in order to compute
"the annual privilege fee as provided by law," *i.e.,*
in the fees, taxes and charges act. Section 4 of the
fees, taxes and charges act references § 82 of the
General Corporation Act only to set the time at
which fees required by the fees, taxes and charges
act shall be paid.

## IV —CONSTRUCTION OF THE TWO ACTS

Plaintiff taxpayer and defendant Treasury De-
partment interpret these two acts quite differently.

Plaintiff taxpayer reads § 84 of the General
Corporation Act to incorporate § 4 of the fees,
taxes and charges act so that:

"[W]hen, under § 84 of the 1931 General Corporation
Act the Department of Treasury has 'found' the report

'to comply with *all* of the requirements of this act,' it has determined (1) that the report was 'accompanied by' the proper 'amount of the annual privilege fee as provided by law' and (2) that the annual report includes all 'information and facts as the Department of Treasury may *demand* and *need* for the purpose of computing the annual privilege fee.' "

Defendant Treasury Department practice on the other hand proceeds under the General Corporation Act without incorporation of § 4 of the fees, taxes and charges act. Under the General Corporation Act, the corporation report is date stamped on receipt next to the box "Filed". It is then desk reviewed, any additional information necessary requested under § 82(p) until adequate, then date stamped opposite "Accepted". It is then "filed" under § 84. Under the authority of the fees, taxes and charges act a field audit of taxpayer's books *in situ* is attempted once every three years. Under Treasury Department practice there is no final determination under § 4 of the fees, taxes and charges act until after such a field audit.

Obviously under plaintiff taxpayer's interpretation the "final determination" of § 4 of the fees, taxes and charges act is incorporated as a part of the General Corporation Act so that when the "acceptance" under that act is made, so is the "final determination". The Treasury Department can do no more. Contrary-wise, under defendant Treasury Department interpretation the "final determination" is part of a tax transaction separate and apart from the General Corporation Act's "filing" operation. In this state of affairs this Court must determine which, if either, interpretation is right.

*A. Background of the Two Acts*

The separate General Corporation Act and the

fees, taxes and charges act with their main purposes and with their individual references to each other create a problem of statutory interpretation. It must be determined first what each statute means alone and second what they mean in juxtaposition with each other. As this law suit clearly indicates it is easier stating the problem than determining its resolution, as both the taxpayer and the tax collector have honestly interpreted the statutes to meet their needs, each quite differently but each most ably and with strong supporting briefs.

As always, this Court's problem is to try to determine what the Legislature meant using the rules of construction set out above. In attacking that problem some perspective is gained from understanding that the Legislature did not have the luxury of writing two acts on a clean slate. If they had had, our job of interpretation might have been considerably easier. Actually what confronted the Legislature when they decided that the corporations could provide a major source of revenue was a long history of corporation acts with a major purpose we shall later consider, with an incidental nominal filing fee.[7]

So the Legislature was faced with the prospect of ruthlessly wiping the slate clean and writing wholly new legislation in two fields or writing their new revenue act in such a way that it did not uproot and overturn a considerable history and experience of corporation acts. Obviously the Legislature chose the least disruptive alternative and the Executive made the best of the situation to accomplish what it considered the legislative purposes. And in this law suit the taxpayer has

[7] *E.g.,* 1903 PA 232, § 19 "twenty cents for each folio."

ably submitted his best judgment of what it all means from his point of view.

## B. Purpose of Two Acts

The main purpose of the title and text of the General Corporation Act is the regulation of corporations and to provide information for the public about them. *Radio Electronics Supply Co v Smith,* 372 Mich 393; 126 NW2d 729 (1964); *Higgins v Hampshire Products Inc,* 319 Mich 674; 30 NW2d 390 (1948). It is worthy of note that there is not a single word in the title of the General Corporation Act about fees or taxes.[8]

The purpose of regulation is largely effectuated by making pertinent information available so that the public can properly judge the character of the entity it is dealing with. Section 82, for example, is mainly devoted to information relative to incorporation, capital stock, assets and liabilities, etc.

There were a number of corporation acts antecedent to the pertinent General Corporation Act, 1931 PA 327, as amended, of which 1921 PA 84 was probably the direct ancestor. However, there were specific corporation acts with much similar language with the same purpose and filing for public information method such as 1903 PA 232, 1893 PA 108, and 1877 PA 113. As early as 1893 PA 108, there was a provision permitting the state to require additional information.[9] This provision,

---

[8] The preamble to 1931 PA 327, the General Corporation Act, states:

"AN ACT to provide for the organization, regulation and classification of corporations; to provide their rights, powers and immunities; to prescribe the conditions on which corporations may exercise their powers; to provide for the inclusion of certain existing corporations within the provisions of this act; to prescribe the terms and conditions upon which foreign corporations may be admitted to do business within this state; to require certain annual reports to be filed by corporations; to prescribe penalties for the violations of the provisions of this act; and to repeal certain acts and parts of acts relating to corporations."

[9] "[A]nd such other matters in regard to the operations as the financial condition of the corporation as the Secretary of State shall specify and require." 1893 PA 108, § 13.

of course, antedates the fees, taxes and charges act which was not enacted until 1921. 1921 PA 85.

Unlike the General Corporation Act, the purpose of which is to regulate corporations through the device of filing public information, the fees, taxes and charges act is as its short title suggests a revenue act with the purpose of raising revenue.[10]

## C. Two Acts Considered In Pari Materia

Plaintiff taxpayer correctly states "[i]t is axiomatic that statutes dealing with the same matter are *in pari materia* and must be construed together to reach a harmonious result."

It is important that the "evident intent and meaning" of the two statutes as well as "the force of both" should be preserved. *Rathbun v Michigan,* 284 Mich 521, 544; 280 NW 35, 44 (1938). This means that if by any reasonable construction the two statutes can be reconciled and a purpose to be served by each, both must stand and be given effect. *People v Buckley,* 302 Mich 12, 22; 4 NW2d 448, 452 (1942); *In re Opening of Gallagher Avenue,* 300 Mich 309, 313; 1 NW2d 553, 554 (1942). In other words, if the two statutes can be interpreted in such a way that neither denies the full effectiveness of the other, that is the way they both must be interpreted.

Measured by this standard, plaintiff taxpayer's interpretation offends the rule of construction *in pari materia* because it denies the full effectiveness of the fees, taxes and charges act by impart-

---

[10] The preamble to 1921 PA 85, the fees, taxes and charges act, states:

"AN ACT prescribing the fees, taxes and charges to be paid to the state by corporations doing or seeking to do business in this state; prescribing the method and basis of computing such fees, taxes and charges; requiring certain annual reports to be filed by corporations; providing for the disposition of the moneys received under this act and prescribing penalties for noncompliance with the provisions thereof."

ing a restraint from the General Corporation Act which is not in the fees, taxes and charges act. If it were necessary to fill in from one act to make sense of the other, that would be one thing. But both acts can stand perfectly well without this transposition. In fact they have more meaning without this transposition. In other words, plaintiff taxpayer's interpretation does not recognize the full purpose to be served by each act and permit them to stand harmoniously. Rather its interpretation leaves one act dismembered without adding anything meaningful to the other.

Indeed, plaintiff taxpayer's method of interpretation has, in principle, been rejected by this Court. In *Voorhies v Judge of Recorder's Court,* 220 Mich 155, 157–158; 189 NW 1006 (1922) it was held:

"The rule, *in pari materia,* does not permit the use of a previous statute to control by way of former policy the plain language of a subsequent statute; much less to add a condition or restriction thereto found in the earlier statute and left out of the later one. The contention made, if allowed, would go beyond the construction of the statute, and engraft upon its provisions a restriction which the legislature might have added but left out." See also *People, ex rel. Pellow, v Byrne,* 272 Mich 284; 261 NW 326 (1935).

In the instant case, plaintiff taxpayer would have this Court read the term "acceptance" of the General Corporation Act to be the equivalent of "final determination" of the fees, taxes and charges act so that when the Treasury Department has made an "acceptance" of the annual report, it has simultaneously made a "final determination." This attempt to add a restriction to the fees, taxes and charges act from the General Corporation Act violates the rule of *Voorhies.*

In addition, if the "final determination" in § 4 of

the fees, taxes and charges act is to be satisfied before acceptances of reports for filing, then the purpose of regulating the corporations by filing full information would be greatly diminished in value because of the much greater time such a policy would demand. It was indicated that there are some 80,000 corporations in Michigan and that they can be audited only every 3 years. Obviously filings of information could not be held up three years. Likewise the purpose of the fees, taxes and charges act would suffer if field audits were foregone. In short, the public information purpose of the General Corporation Act would be weakened by the transposition of the "final determination" of § 4 of the fees, taxes and charges act. Its full meaning is denied and not strengthened.

In conclusion, therefore, in seeking to give full purpose to the legislative intention in the General Corporation Act and the fees, taxes and charges act it makes more sense, and the laws of statutory interpretation require, that the "final determination" concept of § 4 of the fees, taxes and charges act not be transposed into the General Corporation Act but be construed along with, and a part of, its own act.

## V —FIELD AUDIT

Having decided that the authority of the Treasury Department to make a "final determination of the privilege fee" under § 4 of the fees, taxes and charges act is not to be limited by uprooting and transposing it into the process of the General Corporation Act, there are two questions left to consider. First, does § 4 permit a field audit of corporation books for tax purposes. Second, if such audit is permitted, when must it be accomplished.

There can be no dispute that this Court has

recognized the right of audit of corporate books. *In re Appeal of Hoskins Manufacturing Co,* 270 Mich 592; 259 NW 334 (1935); *McLouth Steel Corp v Corporation & Securities Commission,* 372 Mich 76; 124 NW2d 900 (1963). Heretofore, this Court in these two cases has had occasion to consider such audits before "acceptance" or "filing" under the General Corporation Act, §§ 82 and 84. Now that we have determined that § 4 of the fees, taxes and charges act is not transposed to the General Corporation Act but properly belongs in the fees, taxes and charges act, there is no further reason to consider whether the field audit is made before or after such "acceptance" or "filing". We therefore hold that there is no such restriction and that a field audit after "acceptance" or "filing" is authorized just as one prior thereto.

We do, however, accept the restrictions made explicit in both *Hoskins* and *McLouth. Hoskins* held:

"The State itself holds the balance sheet final only in the absence of fraud or error. Such exception is reasonable and proper if 'error' is given the broad meaning of 'incorrectness' and works to the protection of the taxpayer as well as the State. The law should be read and administered to secure to the State all sums justly due it, but no more." 270 Mich 592, 597; 259 NW 334, 336.

This portion of *Hoskins* was quoted with approval by Justice DETHMERS in *McLouth* where seven Justices in different opinions examined and affirmed *Hoskins.* Elsewhere in *McLouth* the words used were "fraud or mistake." *E.g.,* 372 Mich 76, 79, 86; 124 NW2d 900, 902, 905.

In short, we hold the Treasury Department is authorized to examine and audit corporate books for the purpose of determining "fraud", "error", "incorrectness" or "mistake" either in favor of the

state or the taxpayer. The alleged "sales" related to the Vlasic Dairy, Inc., a wholly owned Borden subsidiary, could be such an "error", "incorrectness" or "mistake". In that sense, then, the audit was proper in this case.

## VI —STATUTE OF LIMITATIONS

The state has urged a six-year period in which a final determination must be made and the tax assessed. This argument is premised on the notion that the state was commencing a personal action in attempting to assess and collect the fees.

MCLA 600.5813; MSA 27A.5813 states:

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

Further MCLA 600.5821; MSA 27A.5821 provides in part:

"(3) The periods of limitations prescribed for personal actions apply equally to personal actions brought in the name of the people of this state, or in the name of any officer, or otherwise for the benefit of this state, * * * ."

The state cites *In re MacDonald Estate,* 341 Mich 382; 67 NW2d 227 (1954) where it was held that the general six year statute of limitations applied to an inheritance tax claim of the state where the statute upon which that claim was based did not disclose a contrary legislative intent.

Taxpayer, on the other hand, has argued that the "as soon as practicable" language in § 9 is the statute of limitations for these determinations and assessments. Plaintiff has also argued that because MCLA 450.310; MSA 21.210(1) provides that tax-

payers are limited to three years from the date of overpayment to claim a refund,[11] it is inequitable for the state to have six years in which to make a final determination of the privilege fee.

*A. Is § 9 a Statute of Limitations as to "Final Determination"*

The pertinent language of § 9 is:

"Every corporation subject to the provisions of this act *shall be notified as soon as practicable of the computation of its franchise fee * * * ."* (Emphasis added.)

The significant relationship of "as soon as practicable" is "notified * * * of the computation of its franchise fee". The "as soon as practical" language does not relate to the time within which the computation shall be made. It rather, as indicated, relates to notification of the corporation after the computation is made whenever it is made.

Consequently plaintiff taxpayer's position as illustrated by what his brief calls a case "directly in point" is ill-founded. That case is *Hoffman & Morton Co v Department of Finance,* 373 Ill 116; 25 NE2d 513 (1940). The decision in that case relied on an Illinois statute which read "as soon as practicable after any return is filed" the Department of Finance shall examine the return. The time reference point for "as soon as practicable" in the Illinois statute is "after any return is filed"; in the Michigan statute it is after "the computation of its franchise fee". Each is quite different from the other. Furthermore, the action required after the time reference is quite different too. In the Illinois statute it is examination of the return; in

---

[11] *See* MCLA 206.441; MSA 7.557(1441) which gives a three-year limitation for petitioning for a refund on one's income tax. Also MCLA 206.411; MSA 7.557(1411) which places a three-year limitation on collection of a deficiency, interest or penalty on income tax.

the Michigan statute it is notification of the taxpayer.

In the instant case, the facts indicate that the Treasury conducted a field audit of Borden both in Colombus, Ohio and New York City during 1969, during which the alleged "sales" were discovered. The Treasury's Corporation Franchise Fee Division issued its "determination of fees" on November 18, 1969. Borden must have been notified "as soon as practicable of the computation," because within the week on November 24, 1969, Borden requested a redetermination, well inside of the 20 days prescribed by § 9.

From what has been said it must be obvious that § 9 cannot be said to be a statute of limitations as to when a final determination may be made as to any privilege tax filed.

*B. Three Year Statute of Limitations*

There is much equity in plaintiff taxpayer's argument that if the taxpayer is limited to three years from the date of an overpayment to claim a refund, the state should likewise be limited to three years from the date of an underpayment. However, that is a policy decision we are unable to make, because we are referred to no statute and we can find none setting a three-year statute of limitations applicable to this case.

On the other hand, MCLA 600.5813; MSA 27A.5813, *supra,* appears pertinent.

We believe there was a personal action here by the people of the State of Michigan. The term "personal action" means "an action brought for the recovery of personal property, for the enforcement of a contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property." 1 CJS, Actions, § 1, p 947 citing Bouvier Law

Dictionary.[12] Here the state was attempting to recover back taxes it believed were owing. Taxpayer had a duty and obligation to pay these taxes just as the state was bound to collect them. Clearly if the collection of an inheritance tax in *MacDonald* was deemed a personal action, so should the collection of privilege taxes.[13]

The Court of Appeals believed that defendant state had not yet commenced an action so as not to meet the first requirement of MCLA 600.5813; MSA 27A.5813. As we are dealing with a peculiar type of action here, the indicia of the commencement of it might appear unfamiliar. This is not the type of action which is commenced by filing a

---

[12] *See also,* 1 Am Jur 2d, Actions, § 38, p 572:

"Personal actions are those brought for the specific recovery of goods and chattels, or for damages or other redress for breach of contract or other injuries, of whatever description, the specific recovery of lands, tenements, and hereditaments only excepted."

Black's Law Dictionary (Revised 4th ed), p 50, defines the term in part:

"*Personal* action. In civil law, an action in personam. It seeks to enforce an obligation imposed on the defendant by his contract or delict; that is, it is the contention that he is bound to transfer some dominion or to perform some service or to repair some loss."

[13] *See also Detroit v Stafford,* 320 Mich 6; 30 NW2d 410 (1948) which involved the liability of the administrator of a decedent's estate for a city tax against personal property under a city charter provision that such tax remain a lien on the personal property until paid. We held the general six year statute of limitations applicable there.

In *Unemployment Compensation Commission v Vivian,* 318 Mich 598; 29 NW2d 102 (1947), the unemployment compensation commission sued in circuit court to collect delinquent contributions. In that case defendant due to a misapprehension, failed to file returns with the commission or make any payments to the fund for 1938 and 1939. In 1943 a field advisor, upon checking into defendants' employment for the years in question uncovered the mistake. A "notice of determination" was mailed to defendants on February 16, 1943. The suit was started by plaintiff on February 16, 1945. Defendant did not contest the commission's power to discover error years after the report should have been filed. Rather, it claimed that the unemployment compensation act contained its own statute of limitations which cut off recovery for the state three years after the contributions first became due and payable. After determining that this statutory limitation in the unemployment compensation act did not apply to the instant case, we applied the general six year statute of limitations and allowed the state to recover the contribution owed in 1939 (the 1938 contribution liability having been cut off by the statute).

complaint. A complaint exhibits some form of positive action by a party asserting their position. In the instant case, the issuance by Treasury's Corporation Franchise Fee Division of its determination of fees on November 18, 1969 put the taxpayer on notice that the state intended to collect further taxes in a definite amount from taxpayer. We believe that with this issuance of determination of fees on November 18, 1969, defendant state commenced the action. The claims arose when the annual reports for the years in question were accepted by the Department, for at this time the alleged wrong was done by taxpayer to the detriment of the state though the state was not aware of any injury until the audit.

As to the second element of the statute, whether any other limitations statute controls, we find that none of the statutes mentioned by taxpayer nor any other limitation statute applies to the instant situation. The general six year limitation statute applies unless and until the Legislature in its wisdom chooses to change the statutory period.

Thus, once the claim arose, by accepting the annual report for filing, the state had six years within which to make a final determination or be bound by the fee paid upon acceptance for filing. In the instant case the annual report for 1964 was accepted on July 29, 1964. Therefore the determination issued in November, 1969 was timely for all of the years in question.

The Court of Appeals and the trial court are reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.[14]

---

[14] This appeal came to this Court from a summary judgment at the trial level. The judgment was granted on the basis that what the state did was beyond the scope of its power and untimely. We have reversed both of these grounds and have reinstated the redetermination which was con-

No costs, a public question being involved.

T. M. Kavanagh, C. J., and Swainson, J., concurred with Williams, J.

J. W. Fitzgerald, J., did not sit in this case.

trolling prior to the motion for summary judgment. What we have said is that the state had authority to do what it did and acted timely. We in no way pass upon the correctness of the final determination made after the audit.