BORDEN, INC v DEPARTMENT OF TREASURY

1. LIMITATION OF ACTIONS—ADMINISTRATIVE LAW—CORPORATIONS.

The six-year statute of limitations is not applicable to the administrative determination of corporate privilege fees by the Department of Treasury, because such procedures do not involve bringing "an action" within the meaning of the statute.

2. CORPORATIONS—ADMINISTRATIVE LAW—PRIVILEGE FEES—NOTICE OF LIABILITY.

Notice of determination of further liability for corporate privilege fees by the Department of Treasury must be given as soon as practicable (MCLA 450.309).

3. CORPORATIONS—FRANCHISE FEE—ANNUAL REPORTS—RECOMPUTATION OF FEE.

The Department of Treasury has no right, except in the case of fraud, to recompute the franchise fee for a corporation after the annual reports and accompanying franchise fees have been accepted for that corporation for a given year (MCLA 450.309).

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 June 8, 1972, at Lansing. (Docket No. 12633.) Decided September 27, 1972. Leave to appeal granted, 389 Mich 751.

Complaint by Borden, Inc., against the Michigan Department of Treasury for review of determination of franchise fees. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Dickinson, Wright, McKean & Cudlip* (by *T. Donald Wade* and *Benjamin O. Schwendener, Jr.)* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur 2d, Corporations § 1454.
[2] 18 Am Jur 2d, Corporations §§ 41, 72.
[3] 18 Am Jur 2d, Corporations § 174 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

Before: BRONSON, P. J., and DANHOF and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The issue presented in this appeal is of first impression in this state. Will the acceptance of plaintiff corporation's annual reports and accompanying franchise fees for the years 1964 through 1968 by the defendant Department of Treasury, Corporation Franchise Division,[1] preclude the department from recomputing such fees in 1969 as a result of a discovery of an omission in such reports which increases plaintiff's franchise-fee liability for those years?

Plaintiff, a New Jersey corporation with principal offices in New York City and properly authorized to do business in Michigan, purchased all of the stock of the Vlasic Dairy, Inc., a Michigan corporation. The annual reports for the above-mentioned years failed to include certain sales which were made by the parent company to its subsidiary, as shown by the affidavit of the plaintiff's comptroller:

"That in no case did the financial statements of Borden, Inc., issued during the period January 1, 1963 through December 31, 1967, include sales to Vlasic Dairy, Inc.

"That the gross sales of Borden, Inc., did include its portion of the joint venture sale with Vlasic Dairy Inc.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Executive Order No. 12 dated January 28, 1972, transfers the Corporation Division and the Corporation Franchise Fee Division from the Department of Treasury to the Department of Commerce, effective April 1, 1972.

during the period January 1, 1963 through December 31, 1967, and that the consolidated statements of Borden, Inc., and its subsidiaries for this period did include Vlasic Dairy, Inc. portion of the joint venture sale."

A letter from the department dated January 29, 1970, indicated that as a result of a field audit the above-noted omission has been discovered and that upon redetermination of the fees for the years 1964–1968 a balance of $35,452.15 was due the State of Michigan plus 5% interest. Following receipt of this letter the plaintiff filed a complaint seeking review pursuant to the administrative procedures act, MCLA 24.101 *et seq.;* MSA 3.560(21.1) *et seq.,*[2] as interpreted in *Detroit Edison Co v Department of Treasury,* 382 Mich 497 (1969).

The plaintiff contends that the department, having accepted the reports, had no statutory authority either to make the field audit or to demand the so-called arrearage. The defendant on the other hand asserts that the situation is governed by the ordinary six-year statute of limitations.

The plaintiff, in accordance with the provisions of GCR 1963, 117.2(3), filed a motion in which it was alleged that there was no genuine dispute of facts and prayed for a summary judgment in its favor. The trial court agreed with the position of the plaintiff, granted the motion, and a proper order was filed on September 7, 1971. The defendant appeals as of right.

The pertinent section of the Michigan General Corporation Act, being MCLA 450.84; MSA 21.84, reads as follows:

"The department of treasury shall carefully examine all reports filed in accordance with sections 81 and 82,

---

[2] Repealed by 1969 PA 306; MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* effective July 1, 1970.

and if upon such examination they shall be found to comply with all the requirements of this act, it shall file the report in its office, and shall forward a true copy by mail or express to the county clerk of the county where the corporation has its registered office in this state. The county clerk, upon receipt of the report, shall cause it to be filed in his office immediately."

The first sentence of § 9 of the Michigan fees, taxes and charges act, being MCLA 450.309; MSA 21.210, states:

"Every corporation subject to the provisions of this act shall be notified as soon as practicable of the computation of its franchise fee made pursuant to Sections 5, 5a, 5b, 5c and 5d of this act in the event it has remitted an amount in excess of the proper fee or has any further liability with respect thereto."[3]

The defendant relies heavily on *In re Mac-Donald Estate,* 341 Mich 382, 384 (1954), in which the issue centered on the question of whether or not an inheritance-tax claim of the state was governed by the usual six-year statute of limitation. The Court held:

"The limitation must, therefore, be held to apply to the claim of defendant here unless the statute upon which it is based discloses a contrary legislative intent."

We have no quarrel with this rule but it enures more to the benefit of the plaintiff rather than the defendant. First of all, defendant is not bringing "an action" and, therefore, the statute of limitation would not be applicable. Secondly, § 9 of the franchise fee act, *supra,* does disclose a contrary legislative intent by requiring that the defendant shall inform a corporation "as soon as practicable of the computation of its franchise fee" in the

---

[3] Amended by 1971 PA 97, effective September 1, 1971.

event that such corporation has any further liability with respect to that fee. The defendant failed to so notify the plaintiff in the instant case.

*In re Dodge Bros,* 241 Mich 665, 669 (1928), which involved a review of a decision of the Corporation Tax Appeal Board concerning the privilege tax to be paid by Dodge, furnishes us with some assistance:

"Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer."

Also see *Fidlin v Collison,* 9 Mich App 157 (1967).

Examination of decisions in other jurisdictions indicate that a similar rule has been followed. Of special interest is *State v New Orleans Chess, Checkers & Whist Club,* 116 La 46, 48–50; 40 So 526, 527–528 (1906), in which the president of the club filed an affidavit with the taxing authorities indicating that the annual proceeds from bar sales alone were between $5,000 and $7,500. The Court stated:

"The evidence shows that the tax collector accepted the sworn statements of the president of the club as correct and satisfactory, and without objection issued the licenses for the years 1901, 1902, 1903, 1904, and 1905. No proceedings were had to traverse such sworn statements until July 27, 1905, more than four years after the first license had been issued. We have been referred to no provision of the general license law of

this state which authorizes the tax collector to demand additional license taxes for back years.

\* \* \*

"Justice to the state in the prompt collection of her revenues, and to the citizen in the conduct of his business, demands that questions affecting the basis of assessment should be determined without delay and in a summary manner. In the case at bar the sworn returns made by the president of the club for each of the five years were accepted as correct by the tax collectors for the state and the city of New Orleans, and license taxes based thereon have been regularly paid, and the business of the club has been conducted under annual licenses issued by the proper authorities. It is too late to raise the question of the correctness of the sworn statements on which the license taxes were based. A license is a permit to do business paid for in advance, and, in the nature of things, all questions pertaining to its issuance should be determined before the privilege is exercised and as early in the current tax year as is practicable. Like an assessment, a license apportionment once made and returned cannot be changed without express legislative authority."

For cases which are not on all fours, but which contain similar reasoning, see *Schmuck v Hartman,* 222 Pa 190; 70 A 1091 (1908); *In re Morrow Estate,* 390 Pa 422; 135 A2d 913 (1957); *In re Nolan Estate,* 390 Pa 426; 135 A2d 914 (1957).

Further the defendant relies upon *In re Appeal of Hoskins Mfg Co,* 270 Mich 592 (1935) and *McLouth Steel Corp v Corporation & Securities Comm,* 372 Mich 76, 97 (1963). Only the remarks of Justice BLACK, writing in a separate opinion in *McLouth,* are pertinent to the particular issue before us:

"Even the broad powers the defendant commission must and does possess do not include naked authority to change whimsically the administrative mind after these annual reports with paid fees have been turned in

and accepted. Significant of such arrant assumption of power is the defendant commission's letter of August 15, 1957, dunning claimant for an additional and 're-computed' amount ($95,821.32) of privilege fees for 1956 and 1957 after claimant's 1956 and 1957 reports with fees had been accepted for filing and deposit thereof made. The letter declared: 'On reviewing the case we feel that we misunderstood the adjustment in reference to the reserves for depreciation and deferred Federal income taxes. The privilege tax has been recomputed to include this item as part of taxable surplus.' From this it is clear that the defendant commission claims legal authority, upon mere *ex parte* assertion of its own 'misunderstanding' of a reporting corporation's annual report, to 'recompute' the amount of that corporation's annual privilege fee. I am not disposed to vote such *ex parte* administrative power into legal being."

The exact meaning of these two cases was summed up by the trial judge in his opinion as follows:

"I think it is clear from *Hoskins* and the *McLouth* cases the Corporation Franchise Fee Division may go beyond the annual report and beyond the books of the corporation, but they must do it before a determination is made. And here a determination had been made or should have been made prior to the state's action of November of 1969."

We think the above conclusion by the trial judge is correct. Licensing laws are strictly construed and the department has no right, except in the case of fraud, to go back of the reports once they have been accepted. Accordingly, it must be bound by the terms and conditions of the statutes as presently constituted.

We are fully cognizant of the fact that the state faces a colossal task in reviewing 70,000 annual reports each year in that only mechanical errors can be detected by the usual desk audit, and thus

considerable reliance must be placed on the integrity of the corporation officials. Nevertheless, the granting of the proper authority to the department so as to enable it to carry on its functions in a practical and efficient manner lies within the province of the Legislature and not the courts.

Affirmed. No costs, a public question being involved.

All concurred.