### THE CHESAPEAKE & OHIO RAILWAY COMPANY v DEPARTMENT OF TREASURY

Docket Nos. 77-3652–77-3657. Submitted November 7, 1978, at Lansing.—Decided January 3, 1979.

Chesapeake and Ohio Railway Company (C & O), an interstate railroad operating in Michigan, filed annual reports for the years 1968 through 1974 with the Department of Treasury, Franchise Fee Division, and paid annual franchise fees. Deficiencies were assessed against C & O by the division for each of those years. In each instance C & O applied for a redetermination of its franchise fees to the Corporation Tax Appeal Board. These applications were consolidated for a hearing before the board in 1975. C & O, in an amended petition, allowed by the chairman of the tax appeal board, alleged that the Franchise Fee Division had utilized an incorrect formula in computing its annual franchise fees. The tax appeal board granted C & O franchise fee refunds for the years 1973 and 1974 and reversed a franchise fee deficiency assessed against C & O for 1972. Defendant, Department of Treasury, Franchise Fee Division, appeals this order by leave granted. C & O cross-appeals seeking reversal of the board's denial of its petitions for franchise fee refunds for the years preceding 1973 and for reversal of the deficiencies assessed for the years 1968 through 1974, excluding 1972. *Held:*

1. The Corporation Tax Appeal Board erred in ruling that the refund of franchise fees for the years preceding 1973 was barred by a three-year statute of limitations.

2. The board erred in reversing the 1972 deficiency assessment against C & O. Where an annual report and the franchise fee based thereon were never accepted by the Franchise Fee

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, State and Local Taxation § 1143.
[2] 72 Am Jur 2d, State and Local Taxation § 1141.
[3] 71 Am Jur 2d, State and Local Taxation § 270.
[4] 35 Am Jur 2d, Federal Tax Enforcement § 1.
[5] 71 Am Jur 2d, State and Local Taxation § 601.
[6, 7] [No reference]

Division, the division has the power to recompute the franchise fee of a corporation.

3. The Franchise Fee Division's use of a "weighted average" allocation formula for computing C & O's franchise fees does not comply with the plain language of the statute. The board ruled properly in determining that the "weighted average" computations were prohibited by statute.

4. Remand to the Corporation Tax Appeal Board is necessary where the record is insufficient for the Court of Appeals to determine if a new method or adjusted formula for tax computations was devised and published by the Franchise Fee Division.

5. The board properly ruled that C & O's reserve for deferred income taxes was to be treated as part of surplus for the purpose of computing its franchise fee.

Affirmed in part, reversed in part, and remanded.

1. TAXATION—CORPORATION TAX APPEAL BOARD—PLEADINGS—AMENDMENT—ADMINISTRATIVE RULES.

Pleadings before the Corporation Tax Appeal Board may be amended at any time prior to 10 days before the initial hearing and thereafter by leave of the chairman of the board (1973 AACS, R 450.68).

2. TAXATION—CORPORATIONS—FRANCHISE FEES—LIMITATION OF ACTIONS—CORPORATION TAX APPEAL BOARD—AMENDMENTS—CHAIRMAN'S DISCRETION—STATUTES.

A statutory three-year period of limitations does not bar the refund of corporate franchise fees where petitions for refunds were originally timely filed and where the chairman of the Corporation Tax Appeal Board, in the proper use of his discretion, determines that an amended petition for refunds for present and prior years should be allowed (MCL 450.310; MSA 21.210[1]).

3. TAXATION—CORPORATIONS—FRANCHISE FEES—CALCULATION—STATUTES.

The Corporation Franchise Fee Division, Department of Treasury, is responsible for final calculation of corporate franchise fees (MCL 450.304; MSA 21.205).

4. TAXATION—CORPORATIONS—FRANCHISE FEES—ANNUAL REPORTS—ACCEPTANCE OF ANNUAL REPORTS.

The Department of Treasury is without power to recompute a corporation's franchise fee after having accepted the corporation's annual report and franchise fee; the rule, however, is

inapplicable where the record clearly indicates that the annual report and franchise fee based thereon were never accepted by the department.

5. TAXATION—CORPORATIONS—FRANCHISE FEES—AUDITS—PAYMENTS AND REFUNDS—REPEALED FRANCHISE FEE ACT—ENFORCEMENT— STATUTES.

Department of Treasury audits performed for the purpose of determining corporate franchise fees levied pursuant to the former statutory provision on fees, taxes and charges and all payments received and refunds made on the basis of those audits before repeal of the act are valid (MCL 450.321; MSA 21.213[1]).

6. TAXATION—RAILROADS—FRANCHISE FEES—WEIGHTED AVERAGE FOR-MULA—STATUTES.

The use of a "weighted average" formula for computing franchise fees payable by interstate railroads is not the formula mandated by statute (MCL 450.305b; MSA 21.208[2]).

7. TAXATION—RAILROADS—FRANCHISE FEES—ALLOCATION FACTORS— PUBLICATION OF RULINGS—NEW METHODS OR FORMULAS—STAT-UTES.

The Franchise Fee Division of the Department of Treasury has statutory authority, if it appears that business activity attributable to Michigan was not reflected in an allocation factor used to determine the tax payable by an interstate railroad, to apply any other similar method calculated to effect a fair and proper allocation, provided the division promptly publishes its rulings with respect to any applications of new methods or adjusted formulas (MCL 450.305e; MSA 21.208[5]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *David M. Rosenberger),* for plaintiff.

Before: D. F. WALSH, P.J., and T. M. BURNS and D. E. HOLBROOK, JR., JJ.

D. F. Walsh, P.J. Defendant Department of Treasury, Franchise Fee Division, appeals the order of the Corporation Tax Appeal Board granting plaintiff railroad's petition for franchise fee refund for the years 1973 and 1974 and reversing a franchise fee deficiency assessed against plaintiff by defendant for 1972. On cross-appeal plaintiff seeks reversal of the board's order denying plaintiff's petition for franchise fee refunds for the years preceding 1973 and for reversal of deficiencies assessed against plaintiff by defendant for 1968 through 1974, excluding 1972.

Plaintiff is a Virginia corporation with principal offices in Cleveland, Ohio. A portion of the railroad owned by plaintiff is operated in Michigan. Until the repeal in 1977, of the corporation fees, taxes and charges act, MCL 450.301 *et seq.;* MSA 21.201 *et seq.,* plaintiff was obligated to pay an annual franchise fee in Michigan.

From 1968 to 1974, inclusive, plaintiff filed an annual report and paid a franchise fee based thereon, as required by the now repealed act. MCL 450.304; MSA 21.205. With respect to each of those years, deficiencies were assessed by defendant against plaintiff. In each instance, plaintiff applied under § 9 of the act (MCL 450.309; MSA 21.210) for a redetermination of its franchise fee. The redeterminations were timely appealed by plaintiff to the Corporation Tax Appeal Board. The appeals were consolidated for hearing before the board in 1975. Prior to hearing, plaintiff sought leave to amend its petitions for redetermination. The amended petitions added the allegation that defendant had utilized an incorrect formula in computing plaintiff's annual franchise fee for each of the years in question, being 1969 through 1974. Plaintiff's request to amend its petitions was

granted. The board's opinion was issued on August 30, 1977.

We address four issues on appeal:

1. Did the board err in ruling that consideration of issues raised in petitions for refund of franchise fees for the years preceding 1973 was barred by the three-year statute of limitations set forth in § 10 (MCL 450.310; MSA 21.210[1]) of the corporation fees, taxes and charges act?

2. Did the board err in ruling that the redetermination made by defendant for the 1972 tax year was void because it was based on a field audit conducted "some time after additional information was requested by [defendant] and supplied by [plaintiff]"?

3. Did the board err in ruling that the wrong formula had been used in computing plaintiff's franchise fee?

4. Did the board err in ruling that deficiencies assessed against plaintiff by defendant were proper and necessary because plaintiff used an incorrect accounting system in determining its paid up capital and surplus?

## I. AMENDED PETITION FOR REFUND

On January 30, 1976, plaintiff filed amended petitions for redetermination of franchise fees for the years 1969 through 1974. It was plaintiff's position that it had paid excess franchise fees for those years based on erroneous calculation of the relevant portion of its paid-up capital and surplus. According to plaintiff, the formula which had been used by plaintiff at the direction of defendant did not satisfy the legislatively prescribed formula set forth in MCL 450.305b; MSA 21.208(2).

1973 AACS, R 450.68, provides that pleadings

before the Corporation Tax Appeal Board may be amended at any time prior to 10 days before the initial hearing and thereafter by leave of the chairman of the board. Citing this rule, the acting chairman granted plaintiff's request to file the amended petitions.

In ruling on plaintiff's request for redetermination based on alleged use of an improper formula, however, the board found that the amended petitions sought the relief provided for under § 10 of the act and that, therefore, § 10's three-year statute of limitations applied. Issues raised in the amended petitions for refunds, therefore, were not considered for years preceding 1973. This was error.

Plaintiff filed proper and timely petitions for redeterminations and appeals for each of the years at issue under § 9 of the act. That section contemplated not only reversal of incorrect deficiency assessments but also refund of excess franchise fees paid by corporate taxpayers. It was defendant who was responsible for final calculation of corporate franchise fees. MCL 450.304; MSA 21.205. Under § 9 the appeal board was authorized to consider any issue pertinent to defendant's determination. The chairman of the board, in the proper exercise of his discretion, determined that amendment of the petitions would be allowed. The allocation formula issue (see Issue III, *infra*) was, therefore, properly before the board as to all years for which plaintiff had timely filed for redetermination under § 9 of the act and which were included in its amended petitions.

## II. 1972 Field Audit

On May 15, 1972, plaintiff filed its 1972 annual report and paid its franchise fee based thereon. In

April 1973, defendant requested a complete breakdown of items included in the report under the heading "Other deferred credits". A field audit had begun at plaintiff's home office on October 4, 1972. From June to August 1973, plaintiff and defendant corresponded regarding further explanation of certain of the liabilities listed in plaintiff's 1972 annual report. The field audit was concluded on August 17, 1973. A determination of deficiency, based on this audit, was issued on October 9, 1973.

In *Borden, Inc v Dep't of Treasury,* 391 Mich 495; 218 NW2d 667 (1974), an evenly divided Supreme Court affirmed an opinion of this Court (43 Mich App 106; 204 NW2d 34 [1972]) which had held that the Department of Treasury was without power to recompute a corporation's franchise fee after having accepted the corporation's annual report and franchise fee. A majority of the participating justices held similarly in *Clark Equipment Co v Dep't of Treasury, Revenue Division,* 394 Mich 396; 230 NW2d 548 (1975).

The instant record clearly indicates that plaintiff's 1972 annual report and the franchise fee it computed based on that report were never accepted by defendant. The board, therefore, erred in relying on *Borden* and *Clark* in reversing the 1972 deficiency assessment.

We further note that the issue of defendant's authority to conduct audits at anytime for the purpose of determining corporate franchise fee liability was recently definitively resolved by the Michigan Legislature. MCL 450.321; MSA 21.213(1); 1978 PA 392, an act approved August 1, 1978, and ordered to take immediate effect, provides:

"All audits performed by or at the direction of the

department of treasury for the purpose of determining liability for a corporate franchise fee levied pursuant to former Act No. 85 of the Public Acts of 1921 [MCL 450.301 *et seq., supra]*, and all payments received and refunds made on the basis of those audits before the repeal of former Act No. 85 of the Public Acts of 1921 are declared to be valid and to have been in fulfillment of the legislative purpose to provide for fair administration and enforcement of that act."

### III. Computation of Railroad's Franchise Fee

Each of plaintiff's petitions of appeal was amended by addition of the following paragraph:

"Appellant *[i.e.,* plaintiff] alleges that its Michigan Franchise Fees for all years in issue in this proceeding, being 1969 through 1974, have been incorrectly computed by the Corporation and by the Franchise Fee Division, since a weighted average has been used in the allocation of Appellant's tax base to Michigan, under Section 5b of the Fees, Taxes and Charges Act, MCL 450.305b; MBA *[sic]* 21.208, whereas the plain language of that section calls for allocation on the basis of a simple average of the railroad's passenger-mile and ton-mile fractions, separately computed and individually weighted by the ratio of gross receipts from passenger transportation to total gross receipts from all transportation, and by the ratio of gross receipts from freight transportation to total gross receipts from all transportation respectively."

MCL 450.305b; MSA 21.208(2) set forth the formula to be used in determining the annual franchise fee payable by railroad companies:

"Sec. 5b. For the purpose of determining the annual franchise fee, the tax payable by a railroad company shall be measured by that portion of its paid-up capital and surplus determined by the average of its passenger-

mile and ton-mile fractions, separately computed and individually weighted by the ratio of gross receipts from passenger transportation to total gross receipts from all transportation, and by the ratio of gross receipts from freight transportation to total gross receipts from all transportation, respectively: Provided, That in computing the tax of a non-operating railroad there shall be excluded that portion of its paid-up capital and surplus as the ratio of the value of its property released to an operating railroad bears to the total value of its assets."

For many years defendant has utilized a "weighted average" formula in computing the Michigan franchise fees payable by interstate railroads. There seems to be little argument that this formula fairly accurately reflected the actual amount of plaintiff's business activity attributable to Michigan. Plaintiff argues, however, that this formula is not the formula described in the above-quoted § 5b of the statute.

As noted above (Issue I), the board erroneously refused to consider this issue with respect to the years preceding 1973. With respect to 1973 and 1974, however, the board agreed with the plaintiff that the formula provided for by statute had not been used. Plaintiff's petitions for refunds for those years were granted.

Our review of the statutory language persuades us that the board's understanding of that language was correct, and that the "weighted average" formula used by defendant was not the formula mandated by § 5b of the statute.

Defendant now argues that, under § 5e of the act (MCL 450.305e; MSA 21.208[5]), it had authority to compute corporate franchise fees to reflect more properly business activity attributable to Michigan. Section 5e(4) provided that, if it appeared that

business activity attributable to Michigan was not reflected in an allocation factor determined pursuant to § 5b, the defendant could apply "any other similar method calculated to effect a fair and proper allocation according to the receipts, activity, business and capital reasonably attributable to this state". However, § 5e also provided that defendant was to publish promptly its rulings with respect to application of adjusted formulas under § 5e. The rulings were to be promulgated in conjunction with the Michigan Department of Revenue.

The record indicates that, in 1952, a handwritten message was sent by Mrs. Alma Marzke, the then Administrator of the Corporation Franchise Fee Division, to plaintiff. This message informed plaintiff that the "weighted average" formula would be used by the Franchise Fee Division in computing the railroad's annual franchise fee. Plaintiff used this formula until consultation with independent counsel in 1975-1976. It was at that time that plaintiff first realized that the plain language of § 5b did not call for a "weighted average".

Although the Franchise Fee Division has authority under § 5e to devise new formulas to further the express legislative intent that franchise fees reflect the amount of a corporation's business activity attributable to Michigan, the instant record is insufficient for us to determine if the division devised such a formula for railroads engaged in interstate business and properly published it pursuant to § 5e(4) and the final paragraph of § 5e. The board did not address the issue of the applicability of § 5e. We, therefore, remand to the board for initial determination of this issue.

## IV. Accounting Method

In assessing deficiencies for the years in ques-

tion, defendant expressed its disagreement with certain accounting procedures used by plaintiff. We affirm the board's ruling that plaintiff's reserve for deferred Federal income taxes is to be treated as part of "surplus" for the purpose of computing its franchise fee. *National-Standard Co v Dep't of Treasury,* 384 Mich 184; 180 NW2d 764 (1970).

## Conclusion

1. With respect to the Corporation Tax Appeal Board's ruling that consideration of issues raised in plaintiff's amended petitions was precluded for years preceding 1973 by virtue of the three-year statute of limitations contained in § 10 of the corporation fees, taxes and charges act, the board is reversed.

2. With respect to the board's ruling that "determinations and redeterminations assessing deficiencies based on field audits are void" the board is reversed.

3. With respect to the board's ruling as to the propriety of the "weighted average" allocation formula utilized by the Corporation Franchise Fee Division the board is affirmed. Although we affirm the board's ruling that the "weighted average" formula does not comply with the plain language of § 5b, we remand for consideration of the possible applicability of § 5e. If the board determines that defendant devised and published an alternative formula in compliance with the provisions of § 5e of the act, that alternative formula is to be applied to all years in question, being the years 1969 through 1974. If the board decides that defendant did not devise and publish an alternative formula in compliance with the provisions of § 5e, the formula provided for in § 5b of the act is to be

applied, as interpreted by the board in its opinion, to the years 1969 through 1974.

4. With respect to the board's ruling that the accounting method utilized by the Corporation Franchise Fee Division was correct the board is affirmed. *National Standard Co v Dep't of Treasury, supra.*

Reversed in part, affirmed in part, but remanded for redetermination and further proceedings consistent with this opinion. We retain jurisdiction. No costs, a public question.