FEDERAL-MOGUL CORPORATION v DEPARTMENT OF
TREASURY

Docket No. 91474. Submitted January 12, 1987, at Lansing. Decided
     July 7, 1987.

> On or about August 18, 1972, pursuant to an assessment follow-
> ing an audit by the Department of Treasury, Federal-Mogul
> Corporation paid annual franchise fees and interest totalling
> $203,398.02 for the years 1963 through 1968. On June 18, 1974,
> Federal-Mogul filed with the Franchise Fee Division of the
> Department of Treasury a claim for refund of that amount on
> the basis that the Franchise Fee Division had no power to
> make adjustments for the years 1963 through 1968. The Fran-
> chise Fee Division denied the claim. On October 22, 1975,
> Federal-Mogul filed a petition with the Michigan Corporation
> Tax Appeal Board, appealing the denial of the request for
> refund. The Department of Treasury filed an answer to the
> petition and Federal-Mogul moved for summary judgment. The
> petition languished between 1975 and 1978, when Federal-
> Mogul was notified that its petition had been transferred to the
> Michigan Tax Tribunal. On or about May 25, 1979, Federal-
> Mogul and others filed in Ingham Circuit Court a declaratory
> judgment action and complaint for superintending control over
> the Tax Tribunal and the Court of Claims concerning all claims
> for refund under the franchise fee act. The court, Robert
> Holmes Bell, J., held that 1978 PA 392, enacted as a legislative
> attempt to validate retroactively the Department of Treasury's
> consistent refusal to grant requested refunds of franchise fee
> overpayments, constitutes a denial of equal protection as to
> those plaintiffs who timely requested refunds for tax years
> prior to 1975. The Court of Appeals and Supreme Court af-
> firmed. 111 Mich App 426 (1981). 491 Mich 582 (1984). The

REFERENCES

Am Jur 2d, Interest and Usury §§ 59, 60.

Am Jur 2d, State and Local Taxation §§ 266-276, 787, 1068, 1069.

Right to interest on tax refund or credit in absence of specific
     controlling statute. 88 ALR2d 823.

See also the annotations in the Index to Annotations under Income
     Tax; Taxes.

Department of Treasury issued warrants to the plaintiffs, including Federal-Mogul, paying each corporate taxpayer represented the claimed refund together with interest computed at the rate of five percent per annum pursuant to the Court of Claims Act. Interest was paid from the date of the judgment issued by Judge Bell, through December 31, 1984. The payment to Federal-Mogul was made without prior consent or a settlement agreement between the parties and in the absence of any judgment which adjudicated the individual rights and liabilities of the parties to the refund. Federal-Mogul filed a motion in the Michigan Tax Tribunal to order payment of statutory interest. The Department of Treasury filed an answer asking that the motion be denied and alternatively asking the Tax Tribunal to order the return of interest already paid because the franchise fee act never provided for interest. The Tax Tribunal issued an order sua sponte granting Federal-Mogul summary judgment on its refund petition of October 22, 1975, and awarding interest under the provisions added to the Department of Revenue act by 1980 PA 162. The Department of Treasury appealed. Federal-Mogul cross-appealed claiming entitlement to additional interest on the refund.

The Court of Appeals *held*:

1. The Tax Tribunal had jurisdiction to enter its order.

2. The Tax Tribunal did not abuse its discretion in granting Federal-Mogul summary judgment sua sponte without a hearing.

3. The Tax Tribunal unlawfully ordered the Department of Treasury to pay interest on the refund for the 1963-68 franchise fees under 1980 PA 162. Section 3 of 1975 PA 230, continuing the enforceability of the franchise fee act, governs the handling of the refund claim in this case, and interest is not authorized on a refund under the franchise fee act. Federal-Mogul thus is not entitled to any interest on its refund claim.

4. Although Federal-Mogul is not entitled to the $47,660.48 in interest voluntarily paid by the Department of Treasury under the Court of Claims Act, the parties will be left as they are and the $47,660.48 payment will be treated as a settlement figure voluntarily paid by the department in order to bring an end to the dispute.

5. Federal-Mogul's contention that it is entitled to additional interest on the refund for the 1963-68 franchise fees in accordance with the statutory interest provisions of the Revised Judicature Act is without merit.

6. Interest may not be awarded under the franchise fee act, the Department of Revenue act, nor the Revised Judicature

Act. The Tax Tribunal's judgment awarding Federal-Mogul interest therefore must be vacated.

Award of interest vacated.

1. TAXATION — FRANCHISE FEES — REFUNDS — INTEREST.

The franchise fee act, by virtue of § 3 of 1975 PA 230, retains force and effect over refund claims for franchise fees paid before the repeal of the act; the franchise fee act did not provide for the payment of interest on refunds of overpayments of franchise fees (MCL 450.301 *et seq.*; MSA 21.201 *et seq.*).

2. TAXATION — TAX TRIBUNAL — EQUITY — INTEREST.

The Tax Tribunal does not have equitable powers to award interest.

3. ADMINISTRATIVE LAW — REVISED JUDICATURE ACT.

The statutory interest provisions of § 6013 of the Revised Judicature Act do not apply to an administrative proceeding; the RJA applies only to the organization and jurisdiction of the courts and to civil procedure (MCL 600.6013; MSA 27A.6013).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Ernest Getz*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistant Attorneys General, for respondent.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and G. W. CROCKETT, III,* JJ.

D. E. HOLBROOK, JR., P.J. Respondent appeals as of right the order entered on October 29, 1985, by the Michigan Tax Tribunal granting petitioner Federal-Mogul Corporation summary disposition on its petition for refund of franchise fees and awarding interest under the provisions of the Department of Revenue act. Respondent's motion for rehearing was denied. Petitioner has cross-appealed claiming entitlement to additional interest

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

on the refund. We vacate the order with respect to the award of interest.

On June 18, 1974, Federal-Mogul filed with the Franchise Fee Division of the Michigan Department of Treasury a claim for refund of $202,398.02 for the years 1963 through 1968. That amount included annual franchise fees of $155,745.11 and interest of $46,652.91. Federal-Mogul had paid the fees and interest on or about August 18, 1972, pursuant to an assessment following an audit by the Department of Treasury. Federal-Mogul claimed a refund on the basis that the Franchise Fee Division had no power to make adjustments for the years 1963 through 1968.[1] The Franchise Fee Division denied the claim on September 25, 1975.

Federal-Mogul had filed its application for refund under the franchise fee act, particularly § 10, 1921 PA 85, as amended. MCL 450.301 *et seq.*; MSA 21.201 *et seq.* A review of the franchise fee act reveals that it makes no provision for interest on a claim of refund. Section 10 of the franchise fee act was repealed by 1975 PA 230. Section 1(3) of 1975 PA 230 provided, however, that the fran-

[1] In *Borden, Inc v Dep't of Treasury,* 43 Mich App 106; 204 NW2d 34 (1972), aff'd 391 Mich 495; 218 NW2d 667 (1974), an equally divided Supreme Court affirmed the decision of this Court, holding that when the Franchise Fee Division receives the annual report of a corporation and computes the franchise fee, it exhausts its authority to recompute the fee even if it subsequently obtains information that the department regards as more accurate. Justice LEVIN's opinion for affirmance noted that the corporate franchise fee is initially self-assessed. *Borden, supra,* 391 Mich 495, 504 n 4. It further noted that the statute contained no language expressly or impliedly authorizing field audits. *Borden, supra,* p 505. See also *Clark Equipment Co v Dep't of Treasury, Revenue Div,* 394 Mich 396, 399; 230 NW2d 548 (1975).

In the instant case Federal-Mogul noted that the Department of Treasury had examined Federal-Mogul's annual reports, had found that the reports complied with all the statutory requirements, had accepted each of the reports, and had forwarded copies to the county clerk for filing before the department notified Federal-Mogul of further liability in a letter of March 7, 1969.

chise fee act would extend beyond its repeal date to the extent necessary for enforcement and collection of franchise fees due prior to its repeal.[2]

On October 22, 1975, Federal-Mogul filed a petition with the Michigan Corporation Tax Appeal Board, appealing the denial of the request for refund. The Department of Treasury answered the petition on October 27, 1975. On or about June 18, 1976, Federal-Mogul filed with the appeal board a motion for summary judgment under GCR 1963, 117.2(3), for lack of a genuine issue of material fact such that the corporation was entitled to judgment as a matter of law.

Between 1975 and 1978, no further action was taken on the appeal. Extensive administrative changes occurred. 1975 PA 230 repealed the franchise fee act with the final levy of the franchise fee to occur on May 15, 1976. Section 2 of 1975 PA 230 provided that all cases pending before the Corporation Tax Appeal Board were to be transferred to the Michigan Tax Tribunal on December 31, 1977. On February 8, 1978, Federal-Mogul was notified that its petition had been transferred to the Michigan Tax Tribunal.

Meanwhile, certain legislative changes took place in response to corporate taxpayers' claims for refunds of franchise fee overpayments.[3] The

[2] For the history and nature of the franchise fee, see *Armco Steel Corp v Dep't of Treasury,* 419 Mich 582, 586 n 2; 358 NW2d 839 (1984).

[3] The legislative and administrative responses to corporate taxpayers' claims for refunds of franchise fee overpayments is best summarized in *Armco Steel Corp, supra,* pp 588-589:

The legislative response to the *Borden* [n 1 *supra,*] and *Clark* [*Equipment Co v Dep't of Treasury,* 394 Mich 396; 230 NW2d 548 (1975)] decisions was the passage of 1975 PA 13, amending §§ 9 and 10 of the franchise fee act. MCL 450.309-450.310; MSA 21.210-21.210(1). These amendments, in pertinent part, authorized the division to audit corporations subject to the franchise

end result was the passage of 1978 PA 392,[4] which was "a legislative attempt to validate retroactively the Treasury Department's consistent refusal to grant the requested refunds." *Armco Steel Corp v Dep't of Treasury,* 419 Mich 582, 586; 358 NW2d 839 (1984).

On or about May 25, 1979, Federal-Mogul, to-

fee and provided a four-year limitations period within which deficiencies could be assessed. However, in *International Business Machines Corp v Dep't of Treasury,* 75 Mich App 604; 255 NW2d 702 (1977), lv den 401 Mich 816 (1977), the Court held that 1975 PA 13 would be given prospective effect only, finding no indication in the act of any legislative intent to make the act retroactive. Therefore, for those tax years preceding the passage of 1975 PA 13, the rule of *Borden* and *Clark Equipment* remained controlling. Acquiescing in these decisions only in part, the division cancelled or rescinded those deficiencies which remained unpaid, but refused to grant refunds to those corporate taxpayers who had paid their assessments and later sought repayment. Relying upon *Borden* and *Clark Equipment,* two Court of Appeals panels subsequently affirmed judgments awarding corporate litigants refunds of deficiencies paid by them following unauthorized audits and recomputations. *St Clair-Macomb Consumers Cooperative, Inc v Dep't of Treasury,* 78 Mich App 287; 259 NW2d 462 (1977), lv den 402 Mich 869 (1978); *Giffels Associates, Inc v Dep't of Treasury,* 81 Mich App 730; 265 NW2d 809 (1978), lv den 403 Mich 808 (1978). Faced with a potential loss to the state treasury of up to $35 million in taxpayer refund actions,[4] the Treasury Department again sought remedial legislation. The Legislature responded with the passage of 1978 PA 392, the subject of these appeals.

[4] Although the state treasury faced a loss of up to $35 million at the time Act 392 was passed, the statute of limitations would now bar many refund actions that were originally included within this estimate. Therefore, refund actions pending currently involve less than $2.5 million.

[4] MCL 450.321; MSA 21.213(1):

All audits performed by or at the direction of the department of treasury for the purpose of determining liability for a corporate franchise fee levied pursuant to former Act No. 85 of the Public Acts of 1921, and all payments received and refunds made on the basis of those audits before the repeal of former Act No. 85 of the Public Acts of 1921 are declared to be valid and to have been in fulfillment of the legislative purpose to provide for fair administration and enforcement of that act.

gether with ten other corporate taxpayers, filed in the Ingham Circuit Court a declaratory judgment action and a complaint for superintending control over the Tax Tribunal and the Michigan Court of Claims concerning all claims for refund under the franchise fee act.[5] The petitioners sought a declaration that 1978 PA 392 violated the equal protection provisions of US Const, Am XIV, and Const 1963, art 1, § 2. The petitioner taxpayers argued that the statute unfairly discriminated between two groups of taxpayers, those who did not pay their recomputed annual franchise fees because of the determination in *Borden, Inc v State of Michigan,* 43 Mich App 106; 204 NW2d 34 (1972), aff'd 391 Mich 495; 218 NW2d 667 (1974), that such fees were unlawfully recomputed and those taxpayers who did pay the fees, but, because of 1978 PA 392, would not receive a refund for their overpayment of the illegally determined recomputation.

Judge Robert Holmes Bell issued an order for superintending control determining that the refund claims pending in the Tax Tribunal and in the Court of Claims raised common questions of law, particularly the constitutional issue surrounding 1978 PA 392, which only the circuit court was jurisdictionally empowered to decide. On the merits of the petitioners' claim, Judge Bell held that 1978 PA 392 constituted a denial of equal protection as to those petitioners who timely requested refunds for tax years prior to 1975. This Court and the Supreme Court affirmed. *Armco Steel Corp v Dep't of Treasury,* 111 Mich App 426; 315 NW2d 158 (1981), aff'd 419 Mich 582; 358 NW2d 839 (1984).

---

[5] The Court of Claims became a function of the Ingham Circuit Court pursuant to 1978 PA 164, MCL 600.6404; MSA 27A.6404, effective January 1, 1979. The judges of the circuit court were given full jurisdiction over the Court of Claims. *Id.*

On December 20, 1984, shortly after the Supreme Court had issued its decision in *Armco, supra,* the Department of Treasury issued thirty-two State of Michigan warrants to the corporate taxpayers involved in *Armco,* including Federal-Mogul. The warrants paid to each corporate taxpayer represented the claimed refund together with interest computed at the rate of five percent per annum pursuant to § 6455 of the Court of Claims Act, MCL 600.6455; MSA 27A.6455. Interest was paid from April 16, 1980, the date of the judgment issued by Judge Bell, through December 31, 1984. Federal-Mogul was issued a warrant in the amount of $250,058.50 representing the claimed refund of $202,398.02 and interest from April 16, 1980, through December 31, 1984. The payment was made to Federal-Mogul without prior consent or a settlement agreement between the parties and in the absence of any judgment which adjudicated the individual rights and liabilities of the parties to the refund.

On May 2, 1985, Federal-Mogul filed a motion in the Michigan Tax Tribunal to order payment of statutory interest. The motion asked for interest "on the judgment rendered pursuant to [Federal-Mogul's] Complaint filed on October 22, 1975, or in the alternative, pursuant to [Federal-Mogul's] June 18, 1975 claim for a refund." The motion did not further identify the forum which issued the alleged judgment. The motion acknowledged the payment of $250,058.50 on December 20, 1984. Initially, Federal-Mogul claimed that interest should be paid at the rate of nine percent in accordance with the provisions of the Department of Revenue act. The Department of Treasury responded that the five percent rate of interest under the Court of Claims Act applied and that the provisions of the Department of Revenue act

did not apply. The corporation countered that if the Department of Revenue act did not apply, then statutory interest under the Revised Judicature Act of six percent and twelve percent per annum would apply.

The Department of Treasury filed an answer asking that the motion be denied and alternatively asking the Tax Tribunal to order the return of interest paid because the franchise fee act never provided for interest. The Department of Treasury explained its payment of interest at five percent under the Court of Claims Act as follows:

> In its decision affirming the lower courts [419 Mich 582] the Supreme court stated at page 594:
> "When faced, as in this case, with a choice between securing that which is due under the law and upholding the constitutional requirements of uniformity and equality, the latter is to be preferred 'as the just and ultimate purpose of the law.' "
> Therefore, under mandate of the Supreme Court, all claimants were paid interest in exactly the same manner. This would be especially true of Petitioner which was one of the petitioners in *ARMCO, supra*. Interest was paid in accordance with Section 6455 of the Michigan Court of Claims Act [MCL 600.6455; MSA 27A.6455]. That section requires interest to be paid from date of judgment which in the case of *ARMCO* was April 16, 1980. Respondent paid the interest in accordance therewith.

On October 29, 1985, the tribunal issued an order sua sponte granting Federal-Mogul summary judgment on its refund petition of October 22, 1975. The order also awarded interest under the provisions added to the Department of Revenue act by 1980 PA 162. The order directed the department to recompute interest under the Department

of Revenue act at the rate of three-fourths of one percent per month (which yields a nine percent per annum rate). The order directed the department to compute interest beginning forty-five days after the corporation filed its refund claim on June 18, 1974, to the present. Finally, the order allowed the department to credit the interest that it had voluntarily but erroneously paid in December of 1984.

On appeal the Department of Treasury contends that the Michigan Tax Tribunal did not have jurisdiction to enter the October 29, 1985, order, that the tribunal abused its discretion in granting Federal-Mogul summary judgment sua sponte without a hearing, and that it unlawfully ordered the Department of Treasury to pay interest on the refund for the 1963-68 franchise fees under 1980 PA 162. Although we find that the Tax Tribunal had jurisdiction and the sua sponte order was not improper, we agree with the Department of Treasury's final argument that the interest award was unlawful.

The Department of Treasury first contends that the Tax Tribunal had no jurisdiction since the circuit court never entered an order expressly dissolving its order for superintending control. Assuming, as the Department of Treasury asserts, that Judge Bell issued an order continuing the order for superintending control "until further order of this Court," the language of that order as quoted by the department in its appellate brief indicates that the Tax Tribunal's and Court of Claims' actions would be held in abeyance only until a final judgment had been entered on the declaratory judgment action in circuit court.[6] The

---

[6] A copy of the order on which the Department of Treasury relies is not contained in the lower court record. Resolution of this issue is dependent on the language as quoted in the department's brief.

language does not contemplate the entry of a separate and independent order expressly dissolving the stay of proceedings. Hence the Tax Tribunal's orders were proper.

Nor do we agree with the department's argument that the Tax Tribunal improperly awarded interest on a judgment which it did not enter. The department premises this argument on its assumption that the judge who heard the declaratory judgment action sat as both a circuit court judge and as a Court of Claims judge and that, as a result, the judgment was entered as a Court of Claims judgment. Therefore payment of interest in accordance with the Court of Claims Act, MCL 600.6455; MSA 27A.6455, was required.

We find that the judgment is clearly one of the circuit court and that there was no involvement of the Court of Claims. Further, the declaratory judgment action was not an adjudication on the merits of the individual refund claims of the corporations involved. Hence it cannot be relied upon by either party in this action as a basis for an award of interest. The department's argument that the Tax Tribunal did not have jurisdiction fails.

The department's contention that the sua sponte order of the Tax Tribunal was improper since it was entered without the benefit of a hearing must also fail. The administrative rules set out in 1979 AC, R 205.1101 *et seq.* govern the practice and procedure in all cases and proceedings before the tribunal. 1979 AC, R 205.1111(1). These administrative rules are called the "Tax Tribunal Rules." *Id.* Where there is no applicable Tax Tribunal rule, the court rules and chapter 4 of 1969 PA 306, MCL 24.271 to 24.287; MSA 3.560(171) to 3.560(187), govern. 1979 AC, R 205.1111(3). Federal-Mogul properly notes that the Tax Tribunal rules provide in 1979 AC, R 205.1230(4) that oral

argument is not allowed on motions, except on order of the tribunal.

We now address the department's claim that the Tax Tribunal unlawfully ordered the department to pay interest on the refund for 1963-68 franchise fees under 1980 PA 162, the amendment to the Department of Revenue act, MCL 205.1 *et seq.*; MSA 7.657(1) *et seq.* The department contends that the amendment and the Department of Revenue act were inapplicable since the amendment, effective September 17, 1980, may only be given prospective effect and since the Supreme Court in *Borden, supra,* held the Department of Revenue act inapplicable to the administration of the franchise fee.

This issue is one of first impression. It requires this Court to carefully review the franchise fee act, the Department of Revenue act and the 1980 amendment to the Department of Revenue Act.

In *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 242; 362 NW2d 618 (1984), our Supreme Court defined interest as follows:

> Interest is compensation allowed by law or fixed by the respective parties for the use or forbearance of money, "a charge for the loan or forbearance of money," or a sum paid for the use of money, or for the delay in payment of money. *Balch v Detroit Trust Co,* 312 Mich 146, 152; 20 NW2d 138 (1945); *Coon v Schlimme Dairy Co,* 294 Mich 51, 56; 292 NW 560 (1940); *Marion v Detroit,* 284 Mich 476, 484; 280 NW 26 (1938); *Drennan v Herzog,* 56 Mich 467, 469; 23 NW 170 (1885). See also 47 CJS, Interest & Usury, § 3, pp 18-22.

It is well settled that the right to interest is purely statutory. *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410; 294 NW2d 68 (1980), app dis 450 US 903; 101 S Ct 1337; 67 L Ed 2d 326 (1981);

*Fowler v Muskegon Co,* 340 Mich 522; 65 NW2d 801 (1954). This Court has quoted 47 CJS, Interest, § 5, p 17, with approval: "[T]he legislature has the widest powers on the subject [of interest], and the will of the legislature controls except insofar as limitations are placed on this power by the organic law." *Davis v Howard,* 14 Mich App 342, 344; 165 NW2d 505 (1968), lv den 382 Mich 754 (1969). Statutes which allow interest, being in derogation of the common law, must be strictly construed. *Strauss v Elless Co,* 245 Mich 558; 222 NW 752 (1929); *Schwartz v Piper Aircraft Corp,* 90 Mich App 324, 326; 282 NW2d 306, lv den 407 Mich 892 (1979).

In the absence of fraud, this Court's review of a decision of the Tax Tribunal is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided that they are supported by competent, material and substantial evidence. *Antisdale v City of Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Meadowlanes Limited Dividend Housing Ass'n v City of Holland,* 156 Mich App 238, 245; 401 NW2d 620 (1986).

In awarding "prejudgment interest" to the corporation, the Tax Tribunal relied upon *Wilson v Doehler-Jarvis Div of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960). That reliance is misplaced and untenable within the context of an administrative proceeding in the Tax Tribunal. In *Wilson,* the petitioner filed a motion in circuit court seeking a judgment on a workmens' compensation award which had been allowed by a hearing referee and affirmed on appeal to the Supreme Court. The petitioner's motion sought a judgment and statutory interest on the award. The circuit court granted the judgment and interest at the requested rate, but did not allow interest from the

requested date (i.e., the date of the decedent's death). *Id.,* pp 512-513. The Supreme Court held that, despite the lack of a provision for interest in either the workmens' compensation award or the workmens' compensation statute, a circuit court had jurisdiction to allow interest on the award where the equities warranted the award and the broad purposes of the workmens' compensation act would be served thereby. *Id.,* p 517. In so holding, the Court expressly overruled a contrary principle established in *Fowler v Muskegon Co, supra.*

In contrast to the powers of a circuit court, the powers of the Tax Tribunal are limited to those authorized by statute. MCL 205.731; MSA 7.650(31) describes the Tax Tribunal's jurisdiction; MCL 205.732; MSA 7.650(32) describes the Tax Tribunal's express powers. The Tax Tribunal does not have powers of equity. *Wikman v City of Novi,* 413 Mich 617, 646-649; 322 NW2d 103 (1982); *Romulus City Treasurer v Wayne Co Drain Comm'r,* 86 Mich App 663, 669-670; 273 NW2d 514 (1978), aff'd 413 Mich 728, 732-733; 322 NW2d 152 (1982). In short, the Tax Tribunal does not possess the power to balance the equities and award interest since it has no equitable powers.

The Tax Tribunal cited, but did not rely upon, a decision of the United States Court of Appeals for the Sixth Circuit argued by the corporation, *Aluminum Co of America v Dep't of Treasury of the State of Michigan,* 522 F2d 1120 (CA 6, 1975). According to the Tax Tribunal, the decision is persuasive authority for the allowance of an interest award from the date that the corporation paid additional franchise fees, i.e., August 18, 1972. The corporation contends that the decision should govern the computation of interest in the event that this Court decides that the nine percent rate of

interest under the Department of Revenue act does not apply.

In our opinion, *Aluminum Co, supra,* is readily distinguishable and offers no assistance to the issue of interest in this administrative proceeding. That case involved an action for declaratory and injunctive relief filed in federal district court from a redetermination of franchise fee liability. The court's discussion of an award of interest was mere dicta since the court was not required to decide whether interest was or should be available in an administrative proceeding.

The Tax Tribunal found that the absence of an interest provision for a franchise fee refund claim under the franchise fee act required the application of §§ 31(1) and 23(2) of the Department of Revenue act. Significantly, the Tax Tribunal did not conclude that no interest should be awarded in the absence of an express authorization for interest under the franchise fee act. The Tax Tribunal's reasoning is incorrect because, if an award of interest under the Department of Revenue act is to be made, the award should be based upon an affirmative showing in the statutory language that the Department of Revenue act applies or the award should be based upon an affirmative legislative intent that 1980 PA 162 applies to refund claims filed under the franchise fee act before 1975 and pending an administrative decision. In order to reach such an affirmative showing in the language or in the legislative intent, the existence and effect of 1975 PA 230 must be acknowledged and explained. This the Tax Tribunal did not do. We are unable to find any indication in the statutory history of either the Department of Revenue act or the franchise fee act which would suggest that 1975 PA 230 was no longer to have force and

effect over refund claims such as the corporation's claim in this case.

As noted earlier, § 10 of the franchise fee act makes no provision for interest on a claim for refund. A review of the two refund cases decided by this Court prior to the 1980 amendment suggests that no interest was awarded to those corporate taxpayers. *St Clair-Macomb Consumers Cooperative, Inc v Dep't of Treasury,* 78 Mich App 287; 259 NW2d 462 (1977), lv den 402 Mich 869 (1978); *Giffels Associates, Inc v Dep't of Treasury,* 81 Mich App 730; 265 NW2d 809, lv den 403 Mich 808 (1978).

The Department of Treasury has observed that in 1975 the Legislature added § 9a to the franchise fee act, 1975 PA 13, MCL 450.309a; MSA 21.210a, to allow for interest on deficiencies, but did not authorize an interest provision for the refund remedy authorized by § 10. After reviewing § 9a and the remaining text of 1975 PA 13 in the Public and Local Acts of the Legislature, we agree with the department's observation.

In any event, as noted earlier, the Legislature specifically named the forum, i.e., the Tax Tribunal, and specifically stated that the franchise fee act would remain in effect for the collection and enforcement "of the payment of any fee, penalty, or interest due and payable under the [franchise fee] act for any period in which it was in effect prior to its repeal." 1975 PA 230, §§ 2 and 3.

As noted by the Court in *Borden, supra,* p 506, the Department of Treasury was authorized by the Department of Revenue act to succeed "to the functions and responsibilities of the Michigan Corporation and Securities Commission 'over the enforcement, investigation and collection of *past-due and delinquent* corporate privilege and franchise

fees and license fees of any nature'." The specific statute, MCL 205.13(f); MSA 7.657(13)(f), provides:

> (f) The commission shall also succeed to and is hereby vested with all of the powers, duties, functions, responsibilities and jurisdiction of the corporation and securities commission over the enforcement, investigation and collection of past due and delinquent corporate privilege and franchise fees and license fees of any nature. The corporation and securities commission shall, whenever requested by the department, report to said department the names of all delinquent corporations and delinquent licensees, and the department shall be charged with the collection of all fees and licenses covered in such reports.

Although the precise history of this provision is not clearly revealed in the statutory history, it appears that this provision was authorized either by the original enabling statute, 1941 PA 122, or by an amendment authorized by 1945 PA 103. Thus, the department was responsible for the enforcement and collection of past due and delinquent franchise fees as early as 1945 through 1975. In contrast, a claim of refund was handled by the Franchise Fee Division under § 10 of the franchise fee act.

In support of its claim that interest should not be allowed under the Department of Revenue act, the Department of Treasury points to *Borden, supra,* for the proposition that the Department of Revenue act does not apply to the administration of the franchise fee. We are not persuaded by this argument since *Borden* was decided in 1974, well before the administrative changes resulting from 1975 PA 230. Thus, any language in *Borden, supra,* would not reflect the more significant changes in the administration of the franchise fee.

We next turn to a review of the 1980 amendment to the Department of Revenue act. The Tax Tribunal specifically relied upon § 20, § 30(1), § 30(3), and § 23(2) when it ordered the payment of interest under the Department of Revenue act. Section 20 provides:

> Unless otherwise provided by specific authority in a taxing statute administered by the department, all taxes shall be subject to the procedures of administration, audit, assessment, interest, penalty, and appeal provided in sections 21 to 30.

The statutory history of § 20 is described in Michigan Statutes Annotated as follows:

> History. Added by Pub Acts 1980, No. 162, imd eff June 18, which contained sections 3 and 4 as amended by Act No. 138 of 1981, imd eff October 29, which contained a section 2 providing: "This amendatory act shall take effect January 1, 1981." These sections now provide, "Section 3. Sections 7, 8, and 9 of Act No. 122 of the Public Acts of 1941, as amended, being sections 205.7, 205.8, and 205.9 of the Compiled Laws of 1970, are repealed effective September 30, 1982.
>
> "Section 4. (1) This amendatory act shall take effect September 16, 1980. All new appeals from an assessment, decision or order of the department shall be made to the tax tribunal effective September 16, 1980. An appeal to the state board of tax appeals filed prior to September 16, 1980 shall proceed as follows:
>
> "(a) A matter which has not been heard, and submitted to the board for decision, on or before January 1, 1982 shall be transferred to the tax tribunal as of January 1, 1982.
>
> "(b) A matter which has been heard, and submitted to the board for decision, on or before January 1, 1982 shall be completed and a decision issued before September 30, 1982.

"(2) An appeal having been filed in any court of record of this state prior to January 1, 1981 shall proceed in those courts until a decision is rendered. Appeals filed after January 1, 1981 shall be in accordance with this amendatory act."

Sections 30(1) and 30(3) provide:

Sec. 30. (1) The department shall credit or refund all overpayment of taxes, all taxes, penalties, and interest erroneously assessed and collected, and all taxes, penalties, and interest that are found unjustly assessed, excessive in amount, or wrongfully collected with applicable interest at the rate established in section 23(2).

* * *

(3) A refund shall be certified to the state disbursing authority who shall pay the amount out of the proceeds of the tax in accordance with the accounting laws of the state. Interest at the rate established in section 23(2) shall be added to the refund commencing 45 days after the claim is filed, or 45 days after the date established by law for the filing of the return, whichever is later.

The rate of interest is provided for in § 23(2) as follows:

(2) If the amount paid is less than the amount which should have been paid, the deficiency, together with interest at the rate of ¾ of 1% per month from the time the tax was due, and until paid, shall become due and payable after notice and conference as provided in this act. A deficiency in an estimated payment as may be required by a tax statute administered under this act shall be treated in the same manner as a tax due and shall be subject to the same interest of ¾ of 1% from the time the payment was due, until paid.

The statutory history for §§ 30(1) and 23(2) is the same statutory history as described above for § 20.

House Bill 4718 was enrolled as 1980 PA 162. The legislative analysis indicates that the bill's purpose was to establish a uniform series of procedures under which the department would collect money, provide for appeals, and set up a schedule for penalties, fines, and the like. It notes that House Bill 4718 contained essentially the same enforcement and administrative provisions as the Single Business Tax Act. *Id.* The legislative analysis describes the bill as an effort to codify enforcement and administrative provisions for eight taxing statutes. *Id.* Seven of the eight are named and are as follows: the income, intangibles, severance, cigarette, use, sales, and motor fuel taxes. *Id.* Neither the legislative analysis nor the language of the 1980 amendment specifically names the franchise fee as one of the taxes to be covered by House Bill 4718.

Further, there is no reference to 1975 PA 230 in either the legislative analysis or in 1980 PA 162. As noted earlier, § 3 of 1975 PA 230 provided that the franchise fee act would remain in effect "for the collection and enforcement of the payment of any fee, penalty, or interest due and payable under the [franchise fee] act for any period in which it was in effect prior to its repeal." Prior to the enactment of 1980 PA 162, it was understood that the provisions of the franchise fee act remained in effect for those proceedings involving franchise fees paid before the repeal. *Giffels Associates, Inc, supra,* p 732, n 1.

Thus, the question arises whether the Legislature intended to maintain the refund remedy under the franchise fee act despite the purported consolidation of enforcement efforts in 1980 PA 162 or whether the Legislature intended to repeal

or override § 3 of 1975 PA 230. In light of the lack of clarity surrounding 1980 PA 162 as concerns the franchise fee, we conclude that § 3 of 1975 PA 230 retains force and effect and governs the handling of the refund claim in this case. Since the franchise fee act did not authorize interest on a refund and, further, since no judgment of either the Court of Claims or of a circuit court exists in this case, we conclude that Federal-Mogul is not entitled to any interest on the refund claim.

Although we make this conclusion, we will not remand for entry of an order compelling Federal-Mogul to return the sum of $47,660.48, which represents the interest paid voluntarily by the department under the Court of Claims Act at the rate of five percent per annum. Instead, we choose to leave the parties as they are and treat the payment of $47,660.48 in interest as a settlement figure voluntarily paid by the department in order to bring an end to the dispute. Admittedly, the department paid the money without a settlement agreement between the parties. However, the money was paid before the Tax Tribunal formally adjudicated Federal-Mogul's right to a refund.

In summary, the tribunal's award of interest under 1980 PA 162, an amendment to the Department of Revenue act, is not legally supportable. Such an award is not supported by the legislative changes to the franchise fee act or by the legislative history of 1980 PA 162. The legal bases given by the Tax Tribunal for its award are legally untenable. If the Tax Tribunal has authority to award interest, it must be a power authorized by statute. The Tax Tribunal does not have equitable powers to award interest, unlike a circuit court as in *Wilson, supra.* The Legislature has never authorized interest for a refund claim under the franchise fee act, and it has not shown an affirmative

intent to do so under the Department of Revenue
act. Although it may be unfair to allow the depart-
ment to have held onto the wrongfully collected
franchise fees (dating back to 1972) without requir-
ing some form of interest payment for the loss of
the use of that money, it is for the Legislature and
not the courts to authorize such an award. We
conclude that there is no statutory or other au-
thority to allow an award of interest on Federal-
Mogul's refund claim. Nonetheless, we would not
require Federal-Mogul to return the payment of
$47,660.48 given by the department as interest
under the Court of Claims Act at five percent.
Instead, we will treat the payment as a sum
voluntarily paid in furtherance of settlement of
this litigation.

Finally, Federal-Mogul contends in its cross-ap-
peal that it is entitled to additional interest on the
refund for the 1963-1968 franchise fees in accor-
dance with the statutory interest provisions of
§ 6013 of the RJA, MCL 600.6013(1), (2); MSA
27A.6013(3), (2). Those sections provide:

> (1) Interest shall be allowed on a money judg-
> ment recovered in a civil action, as provided in
> this section.
> (2) For complaints filed before June 1, 1980, in
> an action involving other than a written instru-
> ment having a rate of interest exceeding 6% per
> year, the interest on the judgment shall be calcu-
> lated from the date of filing the complaint to June
> 1, 1980 at the rate of 6% per year and on and
> after June 1, 1980 to the date of satisfaction of the
> judgment at the rate of 12% per year compounded
> annually.

We find that these provisions do not apply to an
administrative proceeding. The RJA, adopted in
1961, applies only to the organization and jurisdic-

tion of the courts and to civil procedure. *City of Birmingham v Oakland Co,* 49 Mich App 299, 306-307; 212 NW2d 51 (1973). Since this is an administrative proceeding before the Tax Tribunal, the RJA does not apply.

Moreover, there is a conspicuous absence of a money judgment in this case. A money judgment has been defined as one which adjudges the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred. *Stewart v Isbell,* 155 Mich App 65, 80; 399 NW2d 440 (1986); *Moore v Carney,* 84 Mich App 399, 404; 269 NW2d 614 (1978). Indeed, a judgment which may involve money but is essentially part of an equitable remedy in a minority shareholder's action has been deemed not to be a "money judgment" for purposes of the statute. *Moore, supra.*

In this case there is no order or judgment which adjudges the payment of a sum of money. The only adjudication of the parties' rights and liabilities with respect to the refund claim is the decision of the Tax Tribunal which was adjudicated well after the refund was voluntarily paid by the department. There is presently no dispute whatsoever that a refund was owed to Federal-Mogul. There is no dispute that the refund has been paid. The only dispute concerns the amount of interest, if any, that should be paid. Without a money judgment in this case, it is abundantly clear that § 6013 of the RJA cannot apply.

A third reason precluding application of § 6013 to this case is that it is not a civil action. This Court has held that the provisions for statutory interest do not apply to an arbitration award because arbitration proceedings are not the equivalent of a civil action. *Moultrie v Detroit Automobile Inter-Ins Exchange,* 123 Mich App 403, 406-

407; 333 NW2d 298 (1983). By extension, an administrative proceeding is not the equivalent of a civil action.

Since interest may not be awarded under § 6013 of the RJA, Federal-Mogul's appeal is meritless. Since interest may be awarded under neither the franchise fee act nor the Department of Revenue act, the Tax Tribunal's judgment awarding Federal-Mogul interest must be vacated.

Vacated in accordance with this opinion.