*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARY GALBRAITH and LISA A. GALBRAITH,

        Petitioners-Appellants,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

UNPUBLISHED
October 10, 2019

No. 345347
Michigan Tax Tribunal
LC No. 17-004900-TT

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Petitioners Gary Galbraith and Lisa A. Galbraith appeal as of right the Michigan Tax Tribunal's (MTT's) final opinion and judgment upholding respondent Department of Treasury's denial of petitioners' request for a principal residence exemption (PRE) rebate for tax years 1996 through 2013. On appeal, petitioners argue that they presented evidence proving that they claimed the PRE in 1995 and equitable estoppel should prevent respondent from denying receipt of their request for the PRE. We affirm.

## I. BACKGROUND

Petitioners purchased a single-family home and believed that they had received PRE status for the property in 1996 based on the filing of a property transfer affidavit with the city shortly after the sale. Petitioners owned the home and used it as their principal residence from December 1995 forward. In 2017, petitioners realized that they had unwittingly paid non-homestead taxes on their home for over 20 years.

Petitioners then filed a PRE affidavit with the city of Sterling Heights, indicating that they had owned and occupied the property as of December 22, 1995. The city's local board of review granted the PRE for the 2014 tax year onward. However, the city had no record that petitioners had claimed the exemption, through affidavit or otherwise, when they purchased the home in 1995, and, thus, denied a rebate for the 1996 through 2013 tax years.

Petitioners then submitted to respondent a form requesting the PRE for the tax period based on a "qualified error" pertaining to the correct taxable status of the property, namely that

the "[t]axpayer filed a timely [PRE] affidavit . . . and qualified for a [PRE] but the assessor failed to grant the exemption." Respondent denied the request.

Petitioners appealed respondent's denial by filing a petition in the MTT. Petitioners provided their December 22, 1995 property transfer affidavit, which was timestamped as received by the city on January 19, 1996. Petitioners also provided a December 22, 1995 Homestead Exemption Update (HEU) form, which was divided into four sections: (1) Property Information, (2) Seller Information, (3) Buyer Information, and (4) Local Governments. At the top, the HEU form read: "Filing [of the form] is voluntary." Under the "Seller Information" section, the form indicated that "[b]y completing this portion of the form, the seller rescinds any exemption currently in place for the property . . ." This section was completed and included the sellers' signatures dated December 22, 1995. The "Buyer Information" section of the form, which petitioners completed and signed on the same date, provided that "[b]y completing this portion of the form, the buyer may claim an exemption for the property . . . . No other affidavit is needed." "Local Governments" section read:

Was an exemption in place for this property before the transfer? □ Yes □ No

If no, what is the first year you will post this exemption to the tax rolls? _____

This section of the form was not completed and the HEU form, unlike the property transfer affidavit, was not timestamped.

Following a hearing, the referee filed a proposed opinion and judgment upholding the denial of the PRE rebate. In doing so, the referee determined there was no evidence that petitioners had filed for a PRE as the HEU form did not show, through a timestamp or otherwise, that it was filed with the city.

Petitioners filed exceptions to the referee's proposed opinion and judgment. Petitioners argued that the referee had failed to consider an inference arising from the fact that the sellers' exempt status was rescinded[1] consistent with the HEU form. According to petitioners, this was evidence that the city had timely received the HEU form and simply failed to record their PRE. Moreover, given the passage of time, petitioners suggested that it was not surprising that the city's records did not contain the HEU form, adding that the city had likely lost or misplaced it. Thus, there was a qualified error, entitling them to a rebate.

The city thereafter sent petitioners a letter, explaining that their file for petitioners' property was temporarily missing. In scanning the file to add it to the digital property record, the city "most likely misfiled" it afterward. The city noted that the database it used before 2003 only had PRE information for 2002. The city added that it would do its best to locate the missing file amongst the 40,000 files in its office and offered two suggestions: (1) petitioners should check their closing packet as "many people retain copies of their exemption forms with their closing

_____

[1] The record reveals that this occurred sometime before 2005.

papers" or (2) petitioners should check with respondent "[a]s all PRE[]s and Rescissions are sent" there.

In the interim, the MTT rejected petitioners' exceptions and adopted the referee's proposed opinion and judgment as its final opinion and judgment. The MTT found that proof of ownership and occupancy and the "presumptive HEU filing" was insufficient to satisfy petitioners' burden of proving that the HEU form was timely filed with the city.

Petitioners moved for reconsideration, raising the same argument regarding the relevancy of the HEU form and asserting that it was fundamentally unfair to allow the city to assert that their file was missing and that petitioners had failed to meet their burden. Petitioners also argued that respondent should be estopped from asserting that they had failed to meet their burden when their failure was attributable to their inability to access their file.

The MTT denied petitioners' motion for reconsideration. Regarding the missing file, the MTT determined that "[a]lthough it is unfortunate that the city cannot locate [p]etitioners' records, the [MTT] lacks powers of equity to consider the fairness of a circumstance when determining whether a party has met its burden of proof."

Petitioners appeal by right.

## II. STANDARD OF REVIEW

"Absent an allegation of fraud, this Court's review of a tax tribunal decision is limited to determining whether the tribunal committed an error of law or applied the wrong legal principles." *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 343; 820 NW2d 242 (2012) (quotation marks omitted). "[W]e must affirm the [MTT]'s findings of fact if competent, material, and substantial evidence on the record supports them." *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 439; 830 NW2d 785 (2013). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 352-353; 483 NW2d 416 (1992).

The proper interpretation and application of a statute is a question of law that we review de novo. *Vanderwerp v Plainfield Charter Twp*, 278 Mich App 624, 627; 752 NW2d 479 (2008). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The best indicator of the Legislature's intent is the statute's language, which, if clear and unambiguous, we must apply as written. *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438-439; 716 NW2d 247 (2006). With regard to tax exemption statutes, we narrowly construe such provisions and do not extend exemptions by implications. *Vanderwerp*, 278 Mich App at 627-628.

## III. ANALYSIS

"Michigan's [PRE], also known as the 'homestead exemption,' is governed by §§ 7cc and 7dd of the General Property Tax Act, MCL 211.7cc and MCL 211.7dd." *Estate of Schubert v Dep't of Treasury*, 322 Mich App 439, 448; 912 NW2d 569 (2017) (quotation marks omitted). Under MCL 211.7cc(1), "[a] principal residence is exempt from the tax levied by a local school district for school operating purposes . . . if an owner of that principal residence claims an exemption as provided in this section." MCL 211.7cc(1). In turn, MCL 211.7cc(2) sets forth the requirements for claiming the PRE, and provides:

> [A]n owner of property may claim 1 exemption under this section by filing an affidavit . . . . The affidavit shall state that the property is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed and shall state that the owner has not claimed a substantially similar exemption, deduction, or credit on property in another state. . . . If an owner of property filed an affidavit for an exemption under this section before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a principal residence exemption and that exemption shall remain in effect until rescinded as provided in this section. [2]

Upon receipt of such an affidavit per subsection (2), and if the claim is not denied, the local assessor must exempt the property owner from collection of the tax. MCL 211.7cc(4).[3]

In the event a (PRE) is not put on the tax roll, MCL 211.7cc(20) governs the process for obtaining relief. That subsection provides in relevant part:

> An owner *who owned and occupied a principal residence* within the time period prescribed in subsection (2) . . . for which the exemption was not on the tax roll *as a result of a qualified error on the part of the local tax collecting unit* may file a request for the exemption for those tax years with the department of treasury. The request for the exemption shall be in a form prescribed by the department of treasury and shall include all documentation the department of treasury considers necessary to consider the request and to correct any affected official records if a qualified error on the part of the local tax collecting unit is recognized and an exemption is granted. [Emphasis added.]

---

[2] The parties do not dispute that the HEU form sufficed as a PRE affidavit for purposes of claiming the exemption in 1995.

[3] Under MCL 211.7cc(6), the assessor may deny a claim for the exemption if the assessor believes "that the property for which an exemption is claimed is not the principal residence of the owner claiming the exemption . . . ."

MCL 211.7cc(34)(d) provides that "qualified error" should be construed as that term is "defined in section 53b." In turn, MCL 211.53b(8) defines "qualified error" to mean one or more of the following:

> (a) A clerical error relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes.

> (b) A mutual mistake of fact.

> *    *    *

> (f) An error regarding the correct taxable status of the real property being assessed.

## A.  THE BURDEN OF PROOF

Petitioners argue that a qualified error occurred because the city failed to record petitioners' PRE in 1996. The MTT rejected this theory, finding that petitioners failed to meet their burden of proving that they were entitled to the exemption because petitioners did not provide any evidence showing that they had claimed the exemption upon the home's purchase in 1995.

As an initial matter, the MTT was correct in assigning the burden of proof to petitioners. To claim the exemption under MCL 211.7cc(2), a taxpayer must file an affidavit with the local taxing unit averring that the taxpayer owns and occupies the property as his or her principal residence. Under this subsection, it is unequivocally the taxpayer's duty to claim and prove entitlement to the exemption. See *Hardenbergh v Dep't of Treasury*, 323 Mich App 515, 524; 917 NW2d 765 (2018). Upon receipt of such an affidavit, the local tax assessor, absent the denial of the exemption based upon belief that the property is not the owner's principal residence, must then exempt the property from the collection of tax. MCL 211.7cc(4) and (6). If the PRE is not then duly recorded on the tax rolls, a taxpayer may obtain relief under subsection (20) by showing that the taxpayer did, in fact, own and occupy the residence for the period at issue and also that they did not receive the exemption "*as a result of a qualified error on the part of the local tax collecting unit.*" MCL 211.7cc(20) (emphasis added).

To determine what factual elements a taxpayer must prove to establish a qualified error for purposes of the exemption, we turn to the text of subsection (20). The first phrase of the first sentence requires that the petitioner be an "owner who owned and occupied the principal residence[.]" Petitioners indisputably met these eligibility requirements. The following portion of the clause contains a causation component; it specifies that the eligible owner's PRE was not placed on the tax roll "as a result of a qualified error on the part of the local tax collecting unit[.]" Significantly, the term "qualified error," which is the cause of the failure, is modified by the phrase "on the part of the local tax collecting unit." It follows that, to obtain relief, the qualified error must be an error of the local tax collecting unit, not an error because of the taxpayer's dereliction of duty—for example, by failing to file a PRE affidavit. And, as a matter of logic, if a taxpayer cannot show that he or she fulfilled his or her statutory obligations to claim

-5-

the exemption, then the taxpayer cannot establish that the exemption was not on the tax roll because of the taxing unit's error.

Stated otherwise, the relief allowed under MCL 211.7cc(20) is predicated on the taxpayer's compliance with the statutory obligations imposed under MCL 211.7cc(2). Reading subsection (2) and subsection (20) together, an appeal of a failure to place a PRE on the tax rolls based on a "qualified error" first requires proof that the taxpayer elected the exemption by filing an affidavit per subsection (2) and was otherwise eligible to receive the exemption before consideration of whether a "qualified error" occurred under section 53b.

## B. PETITIONERS ARE NOT ENTITLED TO CLAIM THE PRE

Turning to petitioners' case, we find no error, as substantial evidence supports the MTT's finding that petitioners failed to provide any evidence that they submitted a form claiming the exemption in 1995. Accordingly, petitioners cannot claim qualified error.

Specifically, the record here demonstrates that petitioners submitted a property transfer affidavit, which was timestamped as having been received by the city, as well as the HEU form. The property transfer affidavit contained no statement indicating that petitioners were claiming the exemption. The HEU form reflected petitioners' election of the exemption. It states, "[b]y completing this portion of the form, the buyer may claim an exemption for the property identified in item 2 above. No other affidavit is needed." But petitioners provided no evidence that the HEU form was ever submitted to the city. First, unlike the property transfer affidavit the HEU was not timestamped. Second, the section of the form to be completed by the local government [the city] had not been completed. Third, the city was unable to produce a copy of the document from its records. Without evidence that they, or anyone else, submitted this form to the city, petitioners could not demonstrate that the failure to include the exemption on the tax rolls was the result of an error on the part of the local tax collecting unit.

Petitioners' assertion that a logical inference arises from the prior owner's rescission of the PRE such that the local taxing unit must have received the HEU form, on which both petitioners claimed the exemption and the prior owners rescinded it, is unavailing. While the city may have rescinded the exemption because it received the HEU form, it is equally plausible that it rescinded the exemption because it recorded the deed or received the property transfer affidavit. Because petitioners have not proffered any evidence to show that it is more likely than not that the city received the HEU form, the supposed circumstantial evidence they rely on is nothing more than mere conjecture. See *Skinner v Square D Co,* 445 Mich 153, 164-168; 516 NW2d 475 (1994) (stating that evidence indicating a mere possibility is speculation). Such speculation is not substantial evidence that petitioners claimed the PRE in 1995 when they purchased the home. Thus, the MTT did not err by rejecting this evidence.

Because petitioners failed to provide any evidence that they complied with MCL 211.7cc(2) by properly claiming the exemption in 1995, the MTT did not err in upholding the denial of the PRE for the tax period at issue.

## C. EQUITABLE ESTOPPEL

Petitioners generally assert that the MTT should have applied equitable principles to estop respondent from denying the city's receipt of the HEU form, given that the city lost or misplaced petitioners' file. In support, petitioners cite the elements necessary to establish equitable estoppel. This argument undoubtedly sounds in equity. Accordingly, the MTT did not err in determining that it lacked the authority to consider petitioners' equity argument. See *Federal-Mogul Corp v Dep't of Treasury*, 161 Mich App 346, 359; 411 NW2d 169 (1987) ("The [MTT] does not have powers of equity."). Moreover, we decline to exercise our powers of equity here. First, respondent is not the city. And, even if the city's alleged failure could be attributed to respondent, there is no indication that it induced petitioners to believe facts that would prejudice them. See *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 141; 602 NW2d 390 (1999) ("Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts.").

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica